# CHARLES LONDON v. MARYLAND CASUALTY COMPANY.[1]

July 3, 1941.

No. 32,789.

*David London* and *Jack Werner*, for appellant.
*Leslie C. Scholle*, for respondent.

HILTON, JUSTICE.

On this appeal we are required to review the action of the trial judge in granting defendant's alternative motion for judgment notwithstanding a verdict for plaintiff in an action upon an insurance policy to recover losses sustained in connection with a taking of plaintiff's furs by unknown persons.

One Arthur Kaplan had possession of the furs while representing plaintiff on a selling campaign. On September 17, 1935, preliminary to calling upon customers in Kansas City, Missouri, Kaplan parked and locked his truck in front of a tavern and went inside for a glass of beer. From where he stood Kaplan could and by several glances did see the back part of his truck, a black

[1]Reported in 299 N. W. 193.

Chevrolet having no distinguishing mark except the word "Minneapolis" in about three-inch type appearing on the right front door. When Kaplan looked out the last time the truck was gone. He ran outside. His testimony was that at the next corner, about 100 feet away, he saw the rear part of his truck, immediately before it vanished, when it was at right angles to the street upon which the tavern fronted. The truck and part of the furs were recovered the following day. By this action plaintiff seeks to make himself whole.

With respect to loss of property outside of plaintiff's premises, the policy undertook to indemnify for all losses occasioned by robbery or its attempt. Robbery is defined by the policy as follows:

"A. *Robbery,* within the meaning of this Policy, is limited to a felonious and forcible taking of property—(a) By violence inflicted upon the custodian or custodians in the actual care and custody of the property at the time; or (b) By putting such custodian or custodians in fear of violence; or (c) By an overt felonious act committed in the presence of such custodian or custodians and of which they were actually cognizant at the time."

After the jury had found that plaintiff's loss was covered by subdivision (c) of the policy, the trial court, assuming the facts most favorable to plaintiff, reached the opposite conclusion. Although conceding that a close question existed upon the question of "presence," nevertheless the trial judge believed that Kaplan's own testimony indicated that he "was not cognizant of any felonious act until it had been consummated and the thief had already escaped." It was, he thought, inescapable that "the custodian was not aware of the overt act at the time of its occurrence." Therefore, there could be no coverage.

The defendant vigorously contends that what the parties intended by the requirements in subdivision (c) was conscious presence—a presence and knowledge of the act of taking when it occurred. It urges that either presence without cognizance or cognizance without presence is insufficient. Plaintiff, however, insists that as

to the necessity of contemporaneous existence of presence and cognizance at the time of the inception of the felonious act, the policy is ambiguous and that ambiguity should, in accordance with the well recognized rule of construction, be resolved against the insurer, particularly where it has voluntarily undertaken to expand liability under its robbery policy.

A policy similar to that here involved was construed by this court in Citizens Loan & Inv. Co. v. St. Paul Mercury Ind. Co. 195 Minn. 515, 263 N. W. 541, where it was held that through its definition of "robbery" the insurance company had contracted to indemnify the assured against losses actually outside the crime of robbery. Thus a loss arising from a deceptive taking of property from the custodian was covered. However, there the facts so clearly showed compliance with both the "presence" and "actual cognizance" elements that it was held proper to direct a verdict for plaintiff. Here that compliance is by no means so clear.

There is much force to the argument of defendant that reduction of risk was its primary motive in including the "presence" and "cognizance" requirements in subdivision (c). It may well be that property attended by an alert custodian is not as subject to theft or disturbance as property in the charge of a neglectful keeper. Very likely, as respects would-be thieves, the conscious presence of a custodian would minimize the possibility of theft. It is from these considerations that defendant concludes that by the language in (c) the parties must have intended that the taking be from the actual, conscious presence of the custodian before it is covered. Under such hypothesis, there would be liability in the case where the custodian unresistingly stands close to the truck and watches the thieves drive away, and no coverage where the keeper walks to a near-by mailbox and upon his return sees the thieves driving away. Important though these distinctions may be to the insurer in its anxiety to curtail risk, we do not think that such elusive bypaths of escape from contractual undertaking should prevail unless unambiguous language so compels.

So far as the policy requires that the taking be from the "presence" of the custodian, the problem is not quite so difficult. The evidence indicates that Kaplan, while inside the tavern within partial view of his truck, was only about 25 feet away. Upon at least two occasions he observed the truck standing unmolested. After not more than ten minutes he noticed that the truck was gone. Running into the street, he caught a fleeting glimpse of his truck before it disappeared.

Standing alone without qualifier or adjective, it must be conceded that the word "presence" is very general in reference. One lexicographer has said that presence is the "act, fact, or state * * * of being in a certain place and not elsewhere, or * * * within sight or call, at hand, or in some place that is being thought of." Webster's New International Dictionary (2 ed.) 1935. Clearly, plaintiff would be the beneficiary of this language. In law it is probable that different conceptions of "presence" will exist for different purposes. Thus, what constitutes the presence of an officer at the commission of a crime for purpose of authorizing arrest without a warrant (see Miles v. State, 30 Okl. Cr. 302, 236 P. 57, 44 A. L. R. 129; Agnello v. United States [2 Cir.] 290 F. 671) is likely to be wholly dissimilar from that presence required of attesting witnesses to a will. See In re Estate of Larson, 141 Minn. 373, 170 N. W. 348.

In cases arising under (c), reasonable persons may well disagree over the existence of this requirement. Upon facts very similar to these, a New York court has concluded that the jury properly found "presence" within a provision identical to subdivision (c). There a truck driver went into a store for about three minutes and upon his return discovered thieves driving away in his truck. Buffalo Smoketeria, Inc. v. Metropolitan Cas. Ins. Co. 143 Misc. 894, 895, 258 N. Y. S. 581, 582. The court refused to adopt the position of the insurer that literal, physical presence was essential. It said that the custodian's "brief presence in the store was no more than if he had turned his back and then turning again

had seen the truck being driven away. The evident intent of the clause in question was to guard against careless or pretended losses by the custodian and not to avoid a loss by a technical strained construction of the policy."

Reference has already been made to what the defendant regards as the purpose of this requirement. However, in absence of a more definite manifestation that the "presence" required by the policy was intended to be less general than that ordinarily connoted by its use, we are constrained to say with the New York court that the question was one of fact and the finding adverse to defendant must stand. As argument to the contrary, we have not overlooked anything contained in Grimes v. Maryland Cas. Co. 300 Ill. App. 62, 20 N. E. (2d) 982.

The problem of construing that part of subdivision (c) which requires that the custodian be "actually cognizant" of the overt act has presented most of the difficulty in this case. Having already decided that in their use of "presence" the parties did not intend actual, literal presence in the strict sense, we are now required to say whether the parties intended that the custodian be aware of the inception of the felonious act. Their contract required that the act be one of which the custodian was "actually cognizant at the time." Clearly, this provision limits the custodian's cognizance to the occasion of the commission of the felonious act. Evidently cognizance or knowledge subsequently acquired was not intended to suffice.

But did the parties intend to split such contractual hairs as would allow recovery where the custodian watches all phases of the criminal act and deny it where, upon emerging from a building, he sees the thieves driving off? The New York court answered this question in the negative, saying: "There was no requirement in this case that the overt act should be seen by the custodian as it commenced." Buffalo Smoketeria, Inc. v. Metropolitan Cas. Ins. Co. 143 Misc. 894, 895, 258 N. Y. S. 581, 582.

Certainly such construction seems the most reasonable in light of the construction already given "presence." Otherwise, the two provisions might well cancel each other out. Thus, should the custodian be engaged in conversation with someone and not see the thieves enter his vehicle, there would clearly be presence. Yet, by the defendant's theory, there would be no liability because the custodian, even though he saw the thieves driving away, did not see the commencement of the felonious act. Since the parties have not required physical, actual presence as prerequisite of coverage, we cannot properly construe this provision to compel the custodian to see the act of taking as it commences. (And when would it commence and when would it cease commencing?) We think that so long as the custodian is actually cognizant of the felonious act during its commission and before the felons have completely removed the property, there has been compliance with subdivision (c).

Tested by this rule, the evidence indicates that Kaplan realized that a crime had been committed when he saw that his truck was gone. Also, the jury could have found that he saw the offenders before they had removed themselves from his range of vision. With this knowledge, he was able by informing the police to assist in the apprehension of the culprits. This construction, while not minimizing the risk to the extent urged by defendant, is amply invited and certainly authorized by the language of subdivision (c) in its present indefinite phraseology. We think the jury had reasonable grounds for concluding that there had been adherence to all requirements. Thus it was error to grant judgment notwithstanding the verdict.

Order reversed.

HOLT, JUSTICE (dissenting).

I dissent. The overt act of the felon is not in the presence of the custodian when the latter is inside a building, where he cannot see the felon enter and drive away with the truck in which are the goods covered by the policy. The presence of the custodian

must be apparent to the robber. It appears to me that Grimes v. Maryland Cas. Co. 300 Ill. App. 62, 20 N. E. (2d) 982, construes subdivision (c) of this policy more fairly than Buffalo Smoketeria, Inc. v. Metropolitan Cas. Ins. Co. 143 Misc. 894, 258 N. Y. S. 581.