Milton Shalleck, J.
If ever a set of unusual circumstances gave rise to a lawsuit, this is one which may well be among the leaders. Only a very minor factual question was involved. It could not materially affect the result. A question of law alone remained. Therefore, at my suggestion the parties waived a trial by jury. The case was tried before me.
The proof was clear and specific. The evidentiary variations among witnesses were of small moment. The testimony disclosed that on May 22,1963, one Jack Purnick was vice-president of and a salesman for plaintiff corporation. He made a sales trip on that day to Washington, D. 0. Coneededly of value of between $20,000 and $30,000 (far exceeding the limits of a protective insurance policy — a scheduled property floater with a Furrier’s Block form attached) fur capes, stoles, jackets and coats of different kinds were placed in New York City for transportation to Washington, D. C., in the trunk of the 1963 Chevrolet driven by Mr. Purnick. Bn route he made intermediate sales calls in Camden, New Jersey, and Philadelphia, Pennsylvania. The furs were intact throughout the journey.
He arrived in Washington at the Harrington Hotel about 8:30 p.m. It was the hotel at which he was accustomed for 20 years to stay when on business. The room clerk testified that she had known him for the 8 years she worked for the hotel. *469 He was familiar with the hotel driveway entrance, lobby and registration desk layout.
The driveway entrance is a recessed semi-oval so that automobiles stopping for hotel purposes do not interfere with normal street vehicular traffic. The pedestrian sidewalk follows the contour of the driveway. As a result, when a car is stopped at the curb in front of the entrance, it is only (variously described) from 6 to 10 feet away (the approximate width of the sidewalk). The registration desk is about 5 to 10 feet (variously described) from the entrance door on the right. Adjacent to it is a large window which “ looks out on the driveway ”.
Stopping at the hotel, Mr. Purnick turned off the ignition of his car, took the car keys with him as he left his driving seat, and ascertained that the trunk lid was locked after examining the contents and finding ‘ everything intact ’ ’. He went inside the lobby to the desk to register and to have a porter carry the furs to his room. Except for his walk to the desk from the car (when his back was to it — altogether about 20 feet) and during the short registry period “ the car Avas always in [his] view ” through the window. After requesting a porter, Mr. Purnick started toward the entrance door to go back to his car. He was just a few steps from the entrance door (calculated by him to be 5 or 6 feet and by defendant’s witness, Mr. White, who was also looking out the Avindow at the time, to be 3 or 4 feet) when he saw a man “ bolt ” into the car, start it almost at once and “thundered off”, driving it away fast. It happened in a matter of seconds. Defendant’s witness, Mr. White, corroborated that fact. Mr. Purnick shouted: ‘ ‘ My car is being stolen * * * get the police ” and ran after the car, but could not catch up to it.
Sometime later the car was found by the police abandoned several blocks away. There was no sign that the locks on the trunk or the ignition suffered any physical damage. But the furs were gone when the trunk was examined. It was estimated by the room clerk, the bellhop, Mr. White, and Mr. Purnick that no more than 5 or 10 minutes elapsed between the latter’s arriving at the hotel and the eventual theft of the car, witnessed by each.
Claim was made by plaintiff for the $5,000 which it says is payable under the policy. Defendant conceded by stipulation that if it is liable, $5,000 is due plaintiff. However, it abjures any liability at all, asserting that provision 4, subdivision (e) of the policy bars plaintiff’s recovery. The pertinent words thereof read as follows:
*470 “ 4. This policy insures against all risks of direct physical loss of or damage to the insured property from any external cause except as hereinafter excluded. * * *
“(c) theft from any automobile, motorcycle, truck, trailer or any other vehicle, unless at the time the theft occurs there is actually in or upon such vehicle, the insured or a permanent employee of the insured or a person whose sole duty it is to attend such vehicle ’ ’.
Defendant argues that these words mean exactly what they say; that Mr. Purnick not being “ actually in or upon ” his ear “ at the time the theft ” occurred, there was no insuring agreement extant. It bases this argument on the only case, defendant claims, in which the court held that the word ‘ actually ’ ’ in the identical phrase, “ actually in or upon such vehicle ” meant an act which was a “ reality ” or “ fact ” and not “ constructive, theoretical or speculative ” in nature. It is an Appellate Term, First Department case, Greenberg v. Rhode Island Ins. Co. (188 Misc. 23).
But the defendant might have cited other cases seemingly helpful to its argument. For instance, Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co. (235 Minn. 243), involved a jewelry block form policy employing the identical words: “ actually in or upon such vehicle ”. The salesman there, feeling sick, parked, went into a nearby hotel after locking the car with the jewelry cases inside (seeable through its window and not locked in its trunk). He “ returned to his car about two to four minutes later ”, the theft occurring in the meantime. The court there interpreted the language as strictly as the court did in Greenberg, unrealistically and theoretically, without putting the words in a modern-day setting or economic way of life. It struggled to distinguish its conclusion from its prior decision in the earlier case of London v. Maryland Cas. Co. (210 Minn. 581) which was, to say the least, somewhat different.
The court was forthright enough to acknowledge that (pp. 251-252) “ To further illustrate the unreasonable result of a strict construction, plaintiffs point out that, inasmuch as exception (I) applies only when the property is in or upon the automobile, all the plaintiff’s employe would have had to do would be to set the sample cases on the sidewalk and walk away, in which event the exception would have no application.” The court concludes: “That might well be true; but, even so, it does not permit us to construe the words used to mean something which they clearly do not mean.”
The very examples prove the court’s error.
*471 The defendant might also have cited Steinzeig v. Mechanics & Traders Ins. Co. (297 S. W. 2d 778, 779 [Mo.]) which also involved a jeweler’s block policy containing the same clause: “ actually in or upon such vehicle There may be some language solace for defendant’s argument in that case, too, for that salesman “ parked his Plymouth Station Wagon * * * on the street near his home; and after locking the doors and windows, he left the car unattended from 9:30 p.m. May 1, until the following morning.” The theft took place in the interval as the result of a forced window and entry. The court did ‘‘ not consider the language of the policy ambiguous ’ ’ (p. 782) and found for the defendant. The result is undoubtedly correct, just as the similar Greenberg case is. The facts in both indisputably put the cases without the policy coverage. Quarrel may be had solely with the generosity of language used which is unnecessary to the result. The cases then become unreliable as precedent when defense is based upon those extra, unneeded and voluntary statements.
Closer to possible help in deciding this question comes the case of Dreiblatt v. Taylor (188 Misc. 199, 200) in which the policy provided: “ This policy excludes loss of the property issued herein from road vehicles of every description when such vehicles are left unattended.” The theft occurred during the time that the automobile was parked in front of plaintiffs’ “ brother’s home with all its doors and windows shut and locked, and while the automobile was being watched by plaintiffs and their brother from the window of the brother’s apartment on the ground floor of an apartment building.” In finding for the defendant, the Appellate Term, this Department, held that “Under the circumstances disclosed by the record here, the evidence * * * does not show attendance of the vehicle witMn the intent of the policy * * *. The attendant, assuming the watcher to be such, was not shown to be actually within or upon the automobile, or so near thereto as to be able to observe a theft of the contents. The term ‘ unattended ’ has a connotation of lack of diligence or protection which would exclude coverage ” (emphasis supplied).
Thus the court wisely appraising the intent of the policy took a pragmatic view of the situation, concluding correctly that the watchers were not so near to the vehicle as to be a deterrent to theft by the surveillance of someone.
The Second Department took a similar stand in Kinscherf Co. v. St. Paul Fire & Marine Ins. Co. (234 App. Div. 385) when the salesman ‘ ‘ left the car parked at the curb of the street, with its doors and windows locked [while] he called on a cus *472 tomer and had lunch.” Two cases of merchandise which were left “ on the floor of his automobile, covered with a canvas ”, were stolen while he was away from the car. The jeweler’s block policy exclusion then read “in or upon any automobile, motorcycle or horse drawn vehicle unless such conveyance is unattended at the time the loss occurs
The court held (p. 386): “ Such language can only be interpreted to mean that if the permanent employee of the plaintiff is not actually within or on the automobile or so near thereto as to be able to observe a theft of the contents, he shall not be deemed to be in attendance at the time the loss occurs * * *. Admittedly the permanent employee under the circumstances alleged * * * was not in attendance and no person was present ‘ to attend the conveyance ’ while the loss occurred.” (Emphasis supplied.) Thus we have an earlier Greenberg decision. (Cf. Primo Outfitting Co. v. Glens Falls Ins. Co., 269 App. Div. 906, affd. 295 N. Y. 910.)
True, the words here used in the insurance policy are not in themselves ambiguous. They mean exactly what they say. So that the cases cited by plaintff for ambiguity interpretation (against the insurer: Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y. 305, 311; Kratzenstein v. Western Assur. Co., 116 N. Y. 54, 57; Shneiderman v. Metropolitan Cas. Co. of N. Y., 14 A D 2d 284; L. Barton Brookov, Inc. v. Glens Falls Ins. Co., 190 Misc. 792, 793) do not apply. Because words are not ambiguous, however, does not mean that they accomplish what they are supposed to — not as to meaning, but as to end needs in the setting of which the words are used. For if all words under all circumstances and on all occasions were literally to be assessed regardless of context, there would be some amusing results. As here, for instance, did the drafter contemplate that by the words “in or upon” someone of defendant’s insured might prefer to sit on top of his car instead of in it? Natural experience would dictate that the word “upon” here was meant to apply only to a motorcycle in this ejusdem generis phrase. But it is not an ambiguous term.
The words in the Greenberg policy were explicit in aiming exemption from liability toward the case of theft from an “unattended” vehicle. And that is precisely what happened there. The insured, in effect, abandoned the automobile on a public street while she was having dinner with friends in a restaurant which afforded no view of the car during the hour she was inside. Some stranger was offered a tip for looking at the car, but the goods were stolen, anyway. Under the cir *473 cumstances of no reliable eye on the vehicle — and that is what the parties agreed to, that the car would be under the eye of someone responsible as a possible deterrent to theft— insurance did not apply. The court did not have to go further. It did not have to generalize by language employing semantics and not the reality of the situation. For there, as here, the clear import of the unambiguous words used within the text of the insuring agreements — not an interpretation of language ambiguity, but the clear purpose of such provision — was that unless someone who had the duty to be with the automobile had it under surveillance the defendant company did not cover the risk. Such was not the situation here. The car was not parked on a public highway, as in Greenberg, but in the entrance-way of a hotel — off the beaten path — and under the guidance and within the sight of a responsible person. The short distance between the object and the person permitted no break in surveillance under the usual anticipated circumstances.
Factually, then, this case differs from Greenberg. For except for the few moments Mr. Purnick walked from the car to the registration desk (about 20 feet at most) and registered at the desk, the undisputed testimony shows that he had the car in view at all times. Yet the theft occurred.
Defense counsel was hard put to answer some of my questions as to possibilities under the policy; but he maintained his adamant stand that as soon as Mr. Purnick left the car under any circumstances, liability was absent. Suppose, I inquired, on Mr. Purnick’s drive down to Washington he had a flat tire, would he not have to leave the car to fix it? Suppose when he stopped for gasoline on the way down, he had to step out of the car to get his wallet to pay for it, or to step into the men’s room of the gas station for a few minutes for needed ablutions. Suppose while driving he felt sick or tired and pulled over to the side of the road and either fainted from illness or fell asleep from tiredness? In each supposititious instance the furs were stolen, although in the last case Mr. Purnick was “ actually in ” the vehicle, complying fully with that provision, literally.
Apparently, the only way (carrying defendant’s argument to its extreme) that Mr. Purnick could properly have complied with the policy in order to have coverage when he arrived at the hotel to register was physically to have driven the car into the hotel to the registration desk or to have remained outside and in the car, shouting to the desk clerk through a bull horn to bring the register and a porter to the car outside. It becomes *474 ridiculous. The policy words, though clear in themselves, can hardly be divorced from their setting. They are explicit, it seems to me, in charging defendant with liability under the proof of this case. Judgment for plaintiff for $5,000.