## Commercial Coin Company v. The North River Insurance Company

*Edward E. Knauss III, Metzger, Wickersham & Knauss,* for defendant.

*T. Eugene Reader, Thomas A. Beckley, Rhoades, Sinon & Reader,* for plaintiff.

LIPSITT, J., July 11, 1967.—Defendant, the North River Insurance Company, has presented a motion for summary judgment pursuant to Pennsylvania Rule of Civil Procedure 1035. The suit involves a claim on behalf of plaintiff, Commercial Coin Company, to recover damages for the theft of coins in the amount of $30,000, which is the limit of coverage on an insurance policy.

Defendant issued to plaintiff an Inland Floater Policy of insurance, known as a Coin Dealer's Floater Policy, effective for one year commencing March 19, 1965. On August 2, 1965, upon payment of an additional premium, an endorsement was added to the said policy for the purpose of increasing coverage from $20,000 to $30,000 while the insured coins were in transit or away from the premises of plaintiff's store at Camp Hill, Pa.

Section 5 (E) of the original policy, upon which suit is made, excluded from coverage the following peril:

"Theft from any unattended automobile unless in the custody of railway express or insured parcel post".

The endorsement, made on August 2, 1965, stated that the limits of liability were subject to six conditions, one of which was:

"2. Such vehicle shall be occupied by a male employee or officer of the insured accompanied by at least

one (1) other male passenger twenty one years of age or more".

The facts, as set forth herein, were developed through the pleadings and a deposition. Plaintiff conducted a coin business in the Camp Hill Shopping Center, Camp Hill, Cumberland County, Pa. On or about 9:45 p.m. on December 5, 1965, Arthur C. Leister, vice president and treasurer of plaintiff, accompanied by J. M. Weisman, another coin dealer, returned from a coin convention in Washington, D. C., and parked a 1965 Oldsmobile sedan owned by plaintiff corporation in the parking lot in front of a Howard Johnson's Restaurant located in the Camp Hill Shopping Center. In the luggage compartment of the car, which was locked, were certain rare coins belonging to plaintiff; they were contained in four aluminum cases and two mobile safes. Mr. Leister locked the automobile, made sure the luggage compartment was locked, placed the key in his pocket and went into the restaurant with Mr. Weisman and three other coin dealers who met them at the restaurant. The automobile was not physically attended nor was it occupied by any officer, employe or representative of plaintiff from that moment until some 20 to 25 minutes later when the automobile was driven off the parking lot by a person or persons unknown. The theft occurred while Mr. Leister and his companions were sitting at a table in the restaurant from which they could observe the automobile through a window. No one was seen entering the automobile, but Mr. Leister and his companions caught sight of the automobile from the rear, as it was being driven southward out of the parking lot. According to the complaint, the automobile had been parked so that its rear end faced and was approximately 50 feet from the front of the restaurant and approximately 30 feet from the window next to which Mr. Leister and his companions were seated.

In his deposition, Mr. Leister said he parked the car about 100 feet from the entrance to the restaurant. The store of Commercial Coin Company was located approximately 3,000 feet from the restaurant. It was Mr. Leister's intention, after having dinner at the restaurant, to take the car and contents to the store and unload the merchandise and coins. While in the restaurant, Mr. Leister went to the washroom and asked Mr. Weisman to watch the car. He was gone from three to five minutes. Mr. Weisman then went to the restroom and was gone about 10 minutes. About five minutes later, Mr. Leister saw the tail end of the car leaving the parking lot heading south. Mr. Leister could just make out the rear end by recognizing the lights on the car.

When the car was recovered, nearly an hour and a half later, perhaps a mile away, there was no sign of forcible entry on the doors or on the lock of the trunk. Mr. Leister used his key to open it. The merchandise and coins had been taken.

The North River Insurance Company asserted in its pleadings that it was not liable under the contract, because the theft of the coins was from an "unattended automobile", which, under paragraph 5 (E) of the contract of insurance, was a peril excluded from coverage. In addition, defendant alleged that the theft occurred while the automobile was not occupied by a male employe or officer of plaintiff, accompanied by at least one other male passenger 21 years of age or more, in violation of condition no. 2 of the endorsement dated August 2, 1965, attached to the original policy of March 19, 1965.

Plaintiff, in reply to the pleadings of defendant, averred that the question of whether or not the automobile was "unattended" was a matter of law. It was admitted that the theft of the coins occurred while the automobile of plaintiff corporation was not occupied

by a male employe or officer of plaintiff, accompanied by at least one other male passenger 21 years of age or more. However, plaintiff maintained that this was not a violation of paragraph 2 of the endorsement dated August 2, 1965.

On or about January 25, 1967, defendant filed, pursuant to Pa. R.C.P. 4014, a request for admission of facts and genuineness of writings, documents or records, setting forth that on May 11, 1966, Arthur C. Leister, vice president and treasurer of plaintiff corporation, gave his oral deposition under oath of the facts and circumstances relating to the claims of Commercial Coin Company against North River Insurance Company; and on the same date, K. R. MacDonald gave an oral deposition under oath, relating to writing of the insurance by North River Insurance Company. No response was made to this application. Consequently, according to said rule 4014(b), a matter of which an admission is requested is admitted unless the adverse party, within 10 days after service of the request, serves a denial upon the requesting party or some objection to the relevance of the request.

On April 12, 1967, defendant filed the motion for summary judgment under 1035, Pa. R.C.P. which is now before this court.

There is indeed no dispute as to the facts with respect to the circumstances surrounding the theft of the coins. The determination of this case rests exclusively on the interpretation of the relevant provisons of the policy.

Some background surrounding the issuance of the insurance may be of help in understanding this litigation. The policy of insurance issued to plaintiff became effective as of March 19, 1965. Prior thereto, there was a discussion between K. R. MacDonald, representing the insurance company, and the officers of the insured corporation, relating to the restrictions, limitations

and safeguards with which the insured Commercial Coin Company had to comply under the policy as approved by the underwriter. The actual policy was physically delivered on April 26, 1965.

At the time the policy was physically delivered by K. R. MacDonald, as agent for the insurance company, to Mr. Leister, vice president of Commercial Coin Company, Mr. MacDonald went over the policy with Mr. Leister and made specific reference to the "unattended automobile exclusion as being probably one of the only important and serious exclusions in the contract". When the endorsement was added, to increase coverage to provide security away from the premises of the insured, the specific limitations attached to the increased coverage were explained to Mr. Leister, including the number of persons who had to be in the car.

Plaintiff seeks the benefit of the basic rule of construction, which holds that an insurance policy will be construed most strongly against the insurer who has prepared it, and, if there is any doubt or ambiguity as to the meaning of the policy, the doubts or ambiguities will be resolved in favor of the insured: Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394, 397 (1956). Defendant insists that the words here used in the insurance policy are not ambiguous and the rule of construction does not apply. It is urged that the words mean exactly what they say.

The first argument made on behalf of plaintiff is to the effect that the exclusion in paragraph 5 (E), which reads "theft from any unattended automobile", is not applicable, because the theft here was not *from* the automobile; it was a theft *of* the automobile itself. This interpretation is much too strained to be acceptable and merits no detailed discussion.

The real question is, whether the automobile was "unattended" within the proper construction of paragraph 5 (E) of the policy. There are no Pennsylvania cases which have been found to aid in the meaning of the word "unattended". Both sides have advanced authorities from other jurisdictions. Plaintiff has supported its position by citing several cases involving an insurance policy which defined robbery as the taking of property "by an overt felonious act committed in the presence of a custodian and of which he was actually cognizant".

In Buffalo Smoketeria, Inc. v. Metropolitan Casualty Ins. Co. of New York, 143 Misc. 894, 258 N. Y. Supp. 581 (Sup. Ct., 1932), the court, in sustaining a jury's decision, held that a robbery was committed in a custodian's presence when the delivery clerk left his truck outside certain premises which he entered to refill a vending machine, remained inside about three minutes and, on coming out, noticed his truck being driven up the street. The next day, the truck was found abandoned and the contents stolen. In London v. Maryland Casualty Co., 210 Minn. 581, 299 N. W. 193 (1941), an employe parked his truck in front of a tavern and went in for a glass of beer. From where he stood, he could see the back part of the truck. He glanced at it from time to time and when he looked the last time, the truck was gone. The court's opinion stated that the words "actually cognizant" did not require that the overt act should be seen by the custodian "as it commences". The court elaborated upon the requirement of the word "presence" and decided that presence did not require actual literal presence in the strict sense.

Plaintiff argues that these cases closely resemble the instant situation, and it contends that there cannot be any basis for distinguishing between a requirement of "presence" and a requirement that the car should not be "unattended". As persuasive as the rea-

soning may appear superficially, it does not sustain analysis. The perplexity lies in equating the word "presence" with the essentiality of attendance.

Much more apropos are other opinions. In William Kinscherf Co., Inc. v. St. Paul Fire & Marine Ins. Co., 234 App. Div. 385, 254 N. Y. Supp 382 (1931), the policy covered lost property while in any automobile, provided "such conveyance is attended at the time the loss occurs by a permanent employee of the assured". The employe left the car to have lunch with a customer. While he was gone, the merchandise was stolen from the car, which had not been moved. There was no recovery. Although the circumstances in the cited case created an easier task for the court than is true of our present matter, the language of the court is pertinent in holding that there was no coverage unless the employe was "so near thereto as to be able to observe a theft of the contents. . . ."

A later New York case (Dreiblatt v. Taylor, 188 Misc. 199, 67 N. Y. S. 2d 378 (Sup. Ct., 1947)) involved a policy which excluded "loss of property from vehicles when left unattended". The court held that an automobile being watched from a window of a house in front of which it was parked was unattended within the terms of the policy.

In Atterbury v. National Union Fire Ins. Co., 94 Colo. 518, 31 P. 2d 489 (1934), the policy also excluded theft from a car "left unattended". The insured parked his car to spend the night in a hotel and did not return to the car until the next afternoon, when he found his violin had been stolen from the car. Here, the court remarked that "unattended" denotes animation, and that locks are not animated, for they give no attention.

Cheatham v. General Insurance Company of America, (Okla.) 371 P. 2d 700 (1932), was another case denying recovery and involving the phrase "while unattended", where the contents were stolen from the car

while the employe was inside the store and out of sight of the vehicle for several minutes.

Plaintiff attempts to distinguish these cases by its theory that the thefts were from the car rather than a theft of the car and then, too, in several of the factual situations, the parties were not paying attention to the car. Furthermore, it is argued that if the thief here had opened the trunk and had started to remove the various cases, the conduct would have been detected by Mr. Leister and his companions. The troublesome element in this rationalization is that in the act of leaving the car and entering the restaurant, there was an interval of time during which a thief might have been able to obtain entrance to the car without awareness by plaintiff's officer or his associates. The certainty that a person or persons did gain access to the car and drive it away without being seen until the vehicle was pulling out of the lot compels the conclusion that the vehicle was, in fact, unattended in the sense that attention could not have been directed to the automobile at all times.

There have been a number of cases reported where the insurance policy contains a clause to require the driver to be actually in or upon the vehicle when the loss occurred. In these cases, the courts have held that actual physical presence was required for the risk to be within the protection of the policy: Seelig v. St. Paul Fire & Marine Ins. Co., 109 F. Supp. 277 (E. D. N. Y., 1953) ; Steinzeig v. Mechanics and Traders Insurance Company, 297 S. W. 2d 778 (Mo. App., 1957) ; Greenberg v. Rhode Island Ins. Co., 188 Misc. 23, 66 N. Y. S. 2d 457 (Sup. Ct., 1946) ; Centennial Insurance Company v. Schneider, 247 F. 2d 491 (9th Cir., 1957). While plaintiff urges that this clause was intended to correct the failure of the word "unattended", in excluding coverage in a situation similar to the present one, the use of more restrictive words such as "actually

in or upon" cannot be regarded as providing a reason to interpret "unattended" as having an unexacting connotation.

In the case of Fidelity-Phoenix Fire Ins. Co. of New York v. Pilot Freight Carriers, Inc., 193 F. 2d 812 (4th Cir., 1952), the driver of a tractor-trailer loaded with valuable merchandise left it for a few minutes to get a cup of coffee. When he returned and opened the door of the tractor, a man on the right seat of the cab with a pistol ordered him to get in and keep quiet. At the same time, another man jumped onto the left running board. The driver was directed to drive the vehicle around the block, where he was then ordered to stop and get out into a waiting car. The trailer was driven off by the two men and later found with the contents stolen. The insured contended that, even though the driver left the vehicle unattended for a period during which the insurance became inoperative, the policy was revived when the driver returned and resumed attendance, since these events occurred before the theft was complete. The Fourth Circuit Court of Appeals said that the insurance company was entitled to a directed verdict, as it was proved that the driver was deprived of all freedom of action the moment he entered the cab, the armed bandit having already taken forcible possession of the vehicle. There could be no revival of the policy, for something had happened in the meanwhile to increase the insurer's risk of loss. The property had passed out of the control of the agent of the company during the interval in which the vehicle was left unattended, and the loss had become well nigh an accomplished fact before the driver's return. Although the policy conditions are distinguishable from those which are presently at issue, and the circuit court referring to the lower court's jury instructions mentions "attendance upon a motor vehicle" as a requirement to justify a finding that the driver was in

attendance when the theft occurred, there is one point made in the decision which is significantly appropriate. It is stated, at pages 816-17, in agreeing with the lower court's charge, that ". . . something more is required than the mere physical presence of the operator: he must be in a position free to perform his duty; and one wholly deprived of liberty of action cannot be said to be in attendance within the meaning of the policy in suit".

The purpose of the writing in the policy now in question is to exclude losses from an automobile, except when a person is attending the property in such a manner as to afford it some protection. Certainly no protection was afforded in the instant case, where five people sitting at a table and eating a meal permitted a thief to gain entry into the automobile, start the car and move it before any of the persons took notice. The facts which occurred show that Mr. Leister and his companions had placed themselves in a predicament inside the restaurant where it was impossible to do anything to forestall the theft, and probably would have been incapable of preventing the taking had they seen the thief enter the car. This trying situation could not conceivably meet the requirement of "attendance", within the intent of the policy.

The insurance here did not cover all risks. The limitations were known to plaintiff. To consider the language of paragraph 5 (E) of the original policy ambiguous or capable of two inferences would be stretching the plain meaning of words, and, under the circumstances of this case where the intent of the insurance was manifest, would be a most unreasonable interpretation.

In view of the determination made in the foregoing discussion, it is not necessary to delve into the question of whether there was compliance with the endorsement which required the vehicle to be occupied by a

male employe or officer of the insured, accompanied by at least one other male passenger 21 years of age or more. Again, no cases are presented by either side which construe this clause. Whether a literal or strict construction of the clause would be unrealistic may be an interesting subject for inquiry, but would only be academic where there has been a violation of the policy provision relating to attendance.

Accordingly, we enter the following

ORDER

And now, July 11, 1967, on the motion for summary judgment, judgment is rendered for defendant, the North River Insurance Company.