372 So.2d 276 (1979)
Bobby Louis SANFORD
v.
STATE of Mississippi.
No. 50894.
Supreme Court of Mississippi.
May 30, 1979.
Walls & Buck, Robert E. Buck, Greenville, for appellant.
A.F. Summer, Atty. Gen., by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
BROOM, Justice, for the Court:
Forcible rape is the crime for which Bobby Louis Sanford was convicted in the Circuit Court of Yalobusha County. He appeals from a sentence of fifty years imprisonment, and bases his argument in the main on the trial court's rejection of his requested "alibi" jury instruction. We affirm.[1]
David Thorpe and his eighteen-year-old female companion (prosecutrix herein), both of Wisconsin, entered this state on June 12, 1976, en route to Keesler Field for a visit with the prosecutrix's sisters. The day's motorcycle trip was to terminate in a camping area at Enid Dam Park in Yalobusha County. At about 9:15-9:30 p.m., the couple *277 stopped at a rest area off of Interstate Highway 55 to examine a map. While there, a car occupied by her soon-to-be attackers passed through the area, according to prosecutrix. Satisfied with their directions, the couple proceeded to the park, only to find that motorcycles were not permitted. Thorpe pulled his motorcycle alongside the road to permit a car behind him to pass when a second car appeared, a door swung open, the motorcycle fell and Thorpe tumbled down an embankment.
The occupants of the automobile directed the two motorcyclists into its back seat at gunpoint where they were forced to keep their heads down while the car was driven an unspecified distance before turning onto a gravel road where it was stopped. Next the car occupants ordered the couple out of the car and robbed them. The prosecutrix was taken a short distance from the car and Thorpe was again forced to its back seat. Then the car was moved forward a short distance, and Thorpe was able to turn around and view his companion standing nude from the waist down with one man kneeling beside her. He was then put into the trunk of the car, but heard her cries and male voices for about twenty minutes.
Testimony of the prosecutrix was that when the car first stopped, two of the men walked her down the road and partially undressed her. She was then carried to a field while pleading with them that they could obtain another girl and that she was on her honeymoon. Her pitiful pleading went unheeded, and she was raped by each of the four occupants of the automobile. Afterward she was permitted to dress and was returned to the vicinity of Thorpe where they were required to lie face down on the ground as the automobile departed. Immediately afterward they walked some distance to a dwelling where law enforcement officers were called. Meanwhile, the abandoned motorcycle had drawn official attention. Around 11:00 p.m. Henry Gray of the Yalobusha County Sheriff's Department responded to a call and met the park officials at the motorcycle's location. Shortly thereafter a park ranger radioed that the missing owners were at a nearby cabin. After conversing, Officer Gray, Thorpe and the prosecutrix drove around and located the scene of the crime. Afterward she was taken to the county hospital where Dr. Harold Sexton performed a pelvic examination at about 2:15 on the morning of June 13, 1976. He found male spermatozoa, some dirt and a few abrasions on her hips and buttocks.
When first interviewed after being taken into custody July 2, 1976, Sanford (then seventeen years old) denied any involvement in the rape. However, upon a second interview, he orally confessed to Sheriff Jones of Yalobusha County, Sheriff Bryan of Panola County and Deputy Sheriff Rudd, in the presence of his mother, that he was the first of the four to rape prosecutrix. Thereafter he led officers to the couple's stolen motorcycle helmets which had been concealed. Sanford's confession, admitted into evidence after a lengthy suppression hearing, is the only testimony linking him to the crime. The remainder of the state's evidence focuses upon the establishment of the crime of rape, the time and place of its occurrence, and the corpus delicti essentials.
At trial Sanford denied having waived his Miranda rights, denied the confession, and denied that he directed the officers to the motorcycle helmets. His testimony was that he resided in his mother's home and was there the entirety of June 12, 1976. He testified that he arose at 8:30 a.m., had breakfast, cut the lawn, watched television and about 4:30 in the afternoon worked with his mother and sisters in their garden until approximately 7:30 or 8:30. Afterward he called his girl friend at about 9:20 p.m. and, because his car was in the shop, remained at home with his family, ultimately retiring at about 10:30 or 10:35. His mother did not observe the appellant retire, but maintained that he was at home when she returned at about 10:30. Sanford's sister, Emma Jean, testified he was at home the entire evening and retired about 11:00 or 11:30. Neither Thorpe nor the prosecutrix could identify Sanford as one of the rapists although they did describe their assailants as young black males.
*278 After the jury found Sanford guilty, he was sentenced to fifty years imprisonment. Here he argues as grounds for reversal two errors: (1) refusal of the trial court to grant a requested alibi instruction, and (2) the overruling of Sanford's motion to suppress the confession. We address these propositions in reverse order.

WAS THE CONFESSION ERRONEOUSLY ALLOWED INTO EVIDENCE?
Although the testimony about the confession was in conflict, the trial court found from abundant evidence that Sanford was appropriately advised of his rights and that he confessed knowledgeably without threats, coercion or improper inducements. Moreover, all of the officers who participated in the interrogation gave testimony to its voluntariness in accord with Agee v. State, 185 So.2d 671 (Miss. 1966), and its progeny. The voluntariness was contradicted by Sanford and his mother, but we have long held that such contradictory evidence presents a question of fact to be determined by the trial court. We have consistently held in such cases that upon review this Court will not disturb the trial court's finding unless it appears to be contrary to the evidence. Clemons v. State, 316 So.2d 252 (Miss. 1975); Harrison v. State, 285 So.2d 889 (Miss. 1973); and Ivey v. State, 246 Miss. 117, 149 So.2d 520 (1963). Our opinion is that admitting the confession was not error because ample evidence supported the trial court's determination.

WAS THE ALIBI JURY INSTRUCTION ERRONEOUSLY REJECTED?
"Alibi" was Sanford's sole defense, other than objecting to the confession. His testimony and that of his mother and sister we have previously summarized, supra. Pursuant to his alibi defense, Sanford requested Instruction D-7, the language of which and accompanying colloquy follow:
The Court instructs the jury that if you believe from the evidence that on June 12, 1976 that Bobby Sanford was at home in the presence of his mother and sister, then you must return a verdict of Not Guilty.
The district attorney objected, stating:
I object to D-7 because it's misleading to the Jury. The instruction says if they believe that he was at home at any time on June 12, 1976, he should be found not guilty, and the State has proved that this alleged act occurred at night time, so it's misleading to the Jury. He could have been home any time that day and still committed the crime.
COUNSEL FOR DEFENDANT (Mr. Kelly): I'll put in the time, Your Honor.
THE DISTRICT ATTORNEY (Mr. Chatham): I believe this instruction is for an alibi defense.
COUNSEL FOR DEFENDANT (Mr. Kelly): Your Honor, for the record, Defendant moved [sic] the Court to permit him to amend Instruction D-7 to include the times of from 9:30 p.m. on June 12, 1976 until 2:15 a.m. on June 13, 1976.
THE COURT: And there's not one scintilla of proof in that regard. The only thing we have in this record is that Mama went to bed at 10:30, a [sic] minutes after 10:35, right after the news. One sister went at 11:30  he went to bed about 11:30, and one sister, I believe she said she was still up at that time. There is no proof as to any other time he was there or anything else. And the Court will refuse that instruction.
"Alibi" as a defense is well established in our criminal jurisprudence. We have held many times that alibi testimony, if believed by the jury when considered along with all the other evidence, requires acquittal. Without question, one who interposes an alibi as the theory of his defense, and presents testimony in support of such a plea, is entitled to a jury instruction focusing upon such a theory. Here there is no indication that Sanford's counsel was not permitted to orally argue the "alibi" during the course of his jury argument made after all the testimony concluded. Although such an argument may have been made, we cannot be certain inasmuch as the record contains no transcript of closing jury arguments. *279 We think it appropriate to state here that in trials of criminal cases (more especially for felonies) presiding judges may (and must if requested) require that jury arguments be made part of the record. Then on appeal, either side in the interest of justice may designate placing a transcription of the jury arguments in the record to be presented to us.
Instruction D-7, as initially requested was improper for several reasons. Not only is it (as originally worded) peremptory in form, requiring acquittal in the event the jury should believe that the appellant Sanford was at home any instant of the day-light or dark hours of June 12, 1976, but it was also clearly improper for failing to limit (to any particular time frame or to day-light or dark hours of June 12, 1976) the appellant's being at home. Further, the instruction is improper in that it should have directed the jury to base its finding not only upon that portion of the evidence dealing with appellant's alibi, but it should have told the jury to consider his alibi evidence along with "all the other evidence in the case." 23A C.J.S. Criminal Law § 1204 (1961) at 527-529. The rule is as stated in 1 Wharton's Criminal Law Evidence § 23, pages 42-43 [13th Ed., Torcia, (1972)]:
All the evidence in the case is to be considered together.
The converse rule is stated under the same section of Wharton's work to be that:
[T]he fact finder cannot acquit the defendant on the ground that the alibi evidence considered by itself raises a "reasonable" doubt.
When the trial court announced that it would not grant the requested instruction, defense counsel moved the court to "permit him to amend Instruction D-7 to include the times of from 9:30 p.m. on June 12, 1976 until 2:15 a.m. on June 13, 1976." Consideration of the proposed amendment to D-7 must be done in the light of testimony which pertained to Sanford's alibi defense. According to him, he retired between 10:30 and 10:35 on the evening of the crime. His mother testified that she watched the news and went to bed at about 10:30 p.m., not knowing when her son went to bed. Sanford's sister testified that she was still up when he went to bed a little before 11:00 or 11:30 of the evening of the offense. Nowhere in the record do we find any testimony that Sanford was "in the presence of" or in the same room with his mother and sister at any time whatever after he went to bed on the night of the offense. Three people in three separate rooms of a certain residence could hardly be said to be in the presence of each other, and hardly could there be drawn any conclusion or inference that none of the three exited the house unknown to the others.[2] Both in its original form and with the proposed amendment, D-7 contains language not only that the appellant "was at home" but that he "was at home in the presence of his mother and sister."
The court's rejection of the proposed instruction as originally submitted in handwriting (obviously, it was hastily drawn rather than prepared in advance of the trial), and then its rejection of the proposed amendment which was sought by an oral motion made at the time the court was considering all of the requested instructions, does not require reversal. Clearly there was no evidence that Sanford throughout all the night was "in the presence of his mother and sister," thus the instruction lacks evidentiary support. Further, as we pointed out above, the instruction seems to focus and comment upon only the alibi testimony in isolation from the rest of the evidence, rather than being considered "together with all the [rest of the] evidence." Additionally, we note that there was testimony indicating that the offense may not have occurred within the time frame between "9:30 p.m... . until 2:15 a.m." but prior to 9:30. Indeed, witness *280 David Thorpe's testimony may be construed to fix the time as prior to 9:30 p.m. on June 12, 1976.
The trial judge's statement in the record (made when defense counsel sought permission to amend Instruction D-7) that "there's not one scintilla of proof in that regard" is not entirely accurate, because the defense had presented testimony at least raising some suggestion (though not with certainty) that Sanford was at home while his mother and sister were also there. However, the judge was not entirely in error as to his recollection of the evidence, because he referred to evidence that "Mama went to bed at 10:30" and "sister went at 11:30." In our view, neither affirmance nor reversal may logically rest upon whether or not a trial judge possesses an infallible memory as to all the evidentiary minutiae presented during a trial. Here the critical issue is: Must the conviction be reversed because the trial judge rejected Instruction D-7 in both its original form and in the form as counsel sought to amend it? The answer is negative because, as initially requested and even after the proposed amendment, the instruction contained the erroneous language (unsupported by testimony) that "Sanford was at home in the presence of his mother and sister ..." The evidence presented by the defense, even if construed in his favor, shows only that the three (Sanford, his mother, and sister) retired for the night. No testimony indicated that they subsequently remained in the presence of each other.[3]
We conclude that Sanford was given a fair trial, and the verdict is well supported by competent evidence. Accordingly, reversal is not warranted.
AFFIRMED.
SMITH, ROBERTSON, P. JJ., and SUGG, WALKER and LEE, JJ., concur.
PATTERSON, C.J., and BOWLING, J., dissent.
COFER, J., takes no part.
PATTERSON, Chief Justice, dissenting:
With deference I dissent to that part of the majority opinion concerning the alibi instruction.
As mentioned, Sanford's sole defense other than contending he did not confess, was an alibi. His testimony and that of his mother and sister have been summarized in the majority opinion. In furtherance of this defense and in accord with the testimony, he requested Instruction D-7. The instruction and discussion about it are repeated:
The Court instructs the jury that if you believe from the evidence that on June 12, 1976 that Bobby Sanford was at home in the presence of his mother and sister, then you must return a verdict of Not Guilty.
The district attorney objected, stating:
I object to D-7 because it's misleading to the Jury. The instruction says if they believe that he was at home at any time on June 12, 1976, he should be found not guilty, and the State has proved that this alleged act occurred at night time, so it's misleading to the Jury. He could have been home any time that day and still committed the crime.
COUNSEL FOR DEFENDANT (Mr. Kelly): I'll put in the time, Your Honor.
THE DISTRICT ATTORNEY (Mr. Chatham): I believe this instruction is for an alibi defense.
COUNSEL FOR DEFENDANT (Mr. Kelly): Your Honor, for the record, Defendant moves the Court to permit him to amend Instruction D-7 to include the times of from 9:30 p.m. on June 12, 1976 until 2:15 a.m. on June 13, 1976.
THE COURT: And there's not one scintilla of proof in that regard. The only thing we have in this record is that Mama went to bed at 10:30, a (sic) minutes after *281 10:35, right after the news. One sister went at 11:30  he went to bed about 11:30, and one sister. I believe she said she was still up at that time. There is no proof as to any other time he was there or anything else. And the Court will refuse that instruction.
The defense of an alibi is well established in our jurisprudence. The testimony concerning such, if believed by the jury, when considered with all of the other evidence, is valid to establish innocence or to cast a reasonable doubt upon guilt, requiring an acquittal. Kennedy v. State, 278 So.2d 404 (Miss. 1973); Kelly v. State, 239 Miss. 683, 124 So.2d 840 (1960); and Newton v. State, 229 Miss. 267, 90 So.2d 375 (1956).
I agree the alibi instruction as presented to the trial judge was improper and therefore correctly refused because it was not limited to the approximate time of the crime. It might be subject to some criticism as not directing the jury's attention to "all the other evidence" which probably would have made it more specific. However, the language used, "if you believe from the evidence," is not such a departure from "all the evidence" to make the instruction erroneous because it induces the jury to consider only a part of the evidence or the evidence of a particular witness. Nichols v. State, 27 Ala.App. 435, 173 So. 652 (1937). In my opinion this criticism of the instruction and the offer to amend is more technical than realistic. Moreover, the trial court did not reject the instruction for that reason but rather did so in accord with the state's objection that it was not limited to the probable time of the crime. At least the defense attorney thought so because he offered to amend in accord with the district attorney's objection upon time which provoked the court to retort: "There is not one scintilla of proof in that regard," and the instruction was refused.
Unfortunately, the record reveals the trial court erred in its recollection of the evidence. There was testimony of three witnesses, the defendant, his mother, and sister, surely more than a scintilla as referred to by the trial judge and probably more than "evidentiary minutiae," as stated by this Court, that appellant was at his mother's home, his residence, at the time the rape occurred which was, as best we can determine, sometime between shortly after 9:30 p.m. and 11:00 p.m. or very soon thereafter, when the officers were notified the victims had sought assistance at a nearby dwelling.
The court, in my opinion, erred in refusing the amendment because there was evidence to support it and because our procedures permit it. The question is not whether the amendment, if permitted, would have conformed the instruction to other niceties of the law, now argued but not then presented, but rather that an offer to amend it to a more exact time was made and refused. The defendant's attorney when faced with the court's statement in denying it, that there was no evidence, "not a scintilla," was left with no logical choice but to proceed with the trial without the alibi instruction essential to his client's defense.
Whether the court permitted the defense attorney to orally argue the alibi to the jury, although the court thought there was not a scintilla of testimony in that regard, is, of course, pure surmise. By conjecturing such argument was permitted and made, I nevertheless think it does not have, and should not have, the potential of replacing a court's instruction to the jury upon the applicable law, and this whether or not the attorney's argument is recorded.
It is also my opinion that refining the instruction, to support its rejection, to the defendant's being in the same room with either his mother or his sister at all critical times, simply ignores his presence, albeit constructive, in another room of the house at intervals where his presence and activities would reasonably have been known and heard by others. I think technically construing the word "presence" to mean within the vision of, lends little justification to its rejection. In Walters, et al. v. State, 218 Miss. 166, 65 So.2d 465 (1953), in citing from Wharton's Criminal Law, Vol. 1, p. 341, par. 256, we stated: "`Nor is it necessary that *282 the party should be actually present, an ear or eyewitness of the transaction, in order to make him principal in the second degree;...'" 218 Miss. at 172, 65 So.2d at 468. Although this case goes on, as does the citation, to base an affirmance upon intent in addition to presence, nevertheless it does point out that presence does not necessarily mean within the same building or within vision. Indeed, the Supreme Court of Minnesota in London v. Maryland Casualty Co., 210 Minn. 581, 299 N.W. 193 (1941), a civil case, had this to say concerning the meaning of the word "presence" which might be presently appropriate because a case about a will was footnoted by the majority as authoritative although it concerned Mississippi Code Annotated section 657 (1942), the execution of wills. The statement follows:
Standing alone without qualifier or adjective, it must be conceded that the word "presence" is very general in reference. One lexicographer has said that presence is the "act, fact or state * * * of being in a certain place and not elsewhere, or * * * within sight or call, at hand, or in some place that is being thought of." Webster's New International Dictionary, 2 Ed., 1935. Clearly, plaintiff would be the beneficiary of this language. In law it is probable that different conceptions of "presence" will exist for different purposes. Thus what constitutes the presence of an officer at the commission of a crime for purpose of authorizing arrest without a warrant (see Miles v. State, 30 Okl.Cr. 302, 236 P. 57, 44 A.L.R. 129; Agnello v. United States, 2 Cir., 290 F. 671) is likely to be wholly dissimilar from that presence required of attesting witnesses to a will. See In re Estate of Larson, 141 Minn. 373, 170 N.W. 348.
(210 Minn. at 584, 299 N.W. at 194)
Although judges are prone to be academic over the meaning of words in support of giving or rejecting an instruction, I think the jury, composed of less technical persons, would have understood the ordinary meaning intended by the instruction as it related to the evidence and that is to say the defendant was at home with his mother and sister at the time of the rape and therefore could not have been a participant in the crime which occurred elsewhere. At least, I think, they could have logically reached this conclusion if they believed the defendant's evidence and had the benefit of the proffered instruction.
The more troublesome issue is whether the defendant was prejudiced by the trial court's error. A confession is neither more nor less than testimony. When introduced into evidence, it is subject to being believed or disbelieved by a jury as any other testimony. The present confession, if believed by the jury, as it was, leaves no room for credibility in the alibi defense upon the present state of the record. However, the testimony of the defendant and his witnesses tending to place him at a different place from where the crime occurred, if properly presented, not only had the possibility of establishing that fact, but in doing so it also had the potential of placing doubt upon the confession. The two are inextricably linked; denying the alibi instruction had the likely, though not intended, effect of strengthening the confession because it was left standing alone.
I have difficulty, under the circumstances, in reasoning the refusal of the amendment to the instruction was harmless beyond a reasonable doubt. There was evidence to support it, it was authorized by law, and moreover, it totally deprived this appellant of his defense. I conclude the cause should be reversed for another trial since I am not convinced a crime, however despicable, should be permitted to thrust aside the procedures, evidence and instructions thereon, long thought necessary to a fair trial.
BOWLING, J., joins in this dissent.
NOTES
[1] This case is sequel to Caldwell and Market v. State, 364 So.2d 1123 (Miss. 1978), wherein we affirmed another conviction for rape committed by two of Sanford's companions on the occasion in question.
[2] As to what constitutes being "in the presence of", we held in Kelker v. Jordan, 228 Miss. 847, 89 So.2d 858 (1956), a case on execution of a will, that witnesses who signed the will in a room other than where the testator signed did not constitute signing "in the presence of" the testatrix.
[3] Morgan v. State, Miss., 370 So.2d 231, is a recently decided case in which we declined to reverse for failure of the court to instruct the jury on presumption of innocence. We did reverse for another reason. Such an instruction was requested but the language of the instruction, as is true of the instant case, was erroneously constructed.