PHIL G. RUVELSON, INC., AND OTHERS, *d. b. a.* ROBERT
ALLEN COMPANY, v. ST. PAUL FIRE & MARINE
INSURANCE COMPANY.[1]

December 7, 1951.

No. 35,528.

---
[1]Reported in 50 N. W. (2d) 629.

William W. Fink and Sullivan, Stringer, Donnelly & Sharood, for appellants.

Oppenheimer, Hodgson, Brown, Baer & Wolff and Wood R. Foster, for respondent.

KNUTSON, JUSTICE.

Appeal from an order sustaining a demurrer to plaintiffs' amended complaint.

Plaintiffs are engaged in the business of selling jewelry and diamonds to dealers. On October 8, 1949, defendant issued a policy of insurance to plaintiffs under which it insured plaintiffs for a period of one year against "loss of and/or damage to the above described property [which included the property here involved] or any part thereof arising from any cause whatsoever except as hereinafter mentioned, viz:"

Thereafter follow 12 separate exceptions, including paragraph (I), which is involved in this appeal. Paragraph (I) reads:

*"Loss of or damage to property insured hereunder whilst in or upon any automobile, motorcycle or any other vehicle* unless, at the time the loss occurs, there is actually in or upon such vehicle, the assured or a permanent employee of the assured, or a person whose sole duty it is to attend the vehicle; * * * ."* (Italics supplied.)

A large portion of all the exceptions, including the one here involved, is printed in red ink. The italicized portion of the exception quoted above is so printed.

The amended complaint alleges in substance, and for the purpose of this decision it is admitted, that one N. D. Olson was a traveling salesman and a permanent employe of plaintiffs; that he traveled about from city to city in parts of Minnesota and North Dakota selling plaintiffs' products to retail jewelry stores; that on the morning of December 6, 1949, he was in Crookston, Minnesota;

that on and prior to December 6 Olson had been under the care of a physician for chronic colds, influenza, and sinus trouble; that he had been instructed by his physician that if and when he had a seizure of cold, sinus trouble, or influenza impending he should immediately start, and continue at regular intervals, to take a proprietary medicine known as "Anahist," or some other antihistamine; that on December 5 he was conscious of the approach of a cold, influenza, or sinus trouble and, obedient to the directions of his physician, proceeded to take the prescribed medicine; that one of the effects of this medicine was the production of an intense state of drowsiness on the part of those who take it; that about 9:30 on the morning of December 6 he was parked across the street from the Crookston Hotel; that he had called on one customer and, upon learning that his next customer would not be available for some time, he returned to his car; that he was suddenly overcome by an intense feeling of fever, weakness, and drowsiness, amounting almost to a state of stupor, accompanied by an immediate need to use toilet facilities; that the two cases in which his jewelry samples were kept weighed about 40 pounds each. The complaint then alleges:

"* * * He [Olson] had found from past experiences that a cup of black coffee would at least partially relieve him from these symptoms. There were about six or eight steps to climb, and several doors to be opened, in order to enter the Crookston Hotel, and his condition was then such that he was too weak to carry these suitcases, weighing a total of about eighty pounds, across the street and up these stairs. There was no one available whom he could hire to carry them for him, nor to guard the car for him, nor to drive the car for him.

"* * * Accordingly, said Olson securely locked said car, with the suitcases containing said jewels and merchandise contained within the same, for the purpose of going to the Crookston Hotel (which was the nearest place to which he could go) to obtain there the relief of which he was in immediate and urgent need, including the drinking of a cup of black coffee to serve as an antidote for the

medicine which he had taken. It would have been unsafe for him to have driven his car without this; and had he attempted to drive his car in the condition in which he then was, such driving would have constituted a menace to the life and safety of himself and others on the streets and highways, as well as imperiled said jewels and merchandise. He accordingly went to said Crookston Hotel and, having obtained the relief in which he had been in urgent need, returned to his car about two to four minutes later. During the period while he was in said hotel, certain person or persons unknown broke one of the windows in said car, opened the door from the inside thereof, and removed and stole the whole of said jewels and merchandise, property of plaintiff.

"* * * There was no other practicable course open to said Olson at the time than that which he took. His need for relief at said hotel was then urgent, immediate, and compelling; he went to the closest place to which he could go in order to obtain such relief. He was unable to carry said suitcases containing said merchandise with him, because of his weakened condition, caused by his then illness.

"* * * Plaintiff alleges that the time when said jewels and merchandise were stolen, said Olson was a permanent employe of plaintiffs and was *actually in or upon said car*, although temporarily absent therefrom, for à period of from two to four minutes, by reason of the circumstances of absolute, urgent and immediate necessity beyond his control or that of plaintiffs." (Italics supplied.)

Plaintiffs contend (1) that Olson was "upon" the car when the jewels were stolen; (2) that it would lead to an absurd and unreasonable result so to construe this policy as to require actual presence in or upon the car on the part of the person in charge of the jewels at all times; (3) that the doctrine of substantial compliance applies to the facts of this case and that there has been substantial compliance; (4) that paragraph (I) applies only to a loss and not to a theft of the goods; and (5) that policies of insurance, particularly when not issued on a statutory form, are to be

construed liberally in favor of the insured and strictly against the insurer.

■ Much of the quoted portion of the complaint constitutes conclusions of law rather than allegations of fact. It is to be noted that the complaint alleges that at the time the jewels were stolen Olson was actually in or upon said car, although temporarily absent therefrom. A demurrer admits all material facts well pleaded, but it does not admit conclusions of law. Robinson v. Butler, 226 Minn. 491, 33 N. W. (2d) 821, 4 A. L. R. (2d) 143. The italicized statement above, which, if established by plaintiffs, would be determinative of the case, is a conclusion and cannot be said to be admitted by the demurrer.

■ Plaintiffs readily concede that Olson was not actually "in" the car, but contend that the word "upon" has a broader meaning and should be construed to be the substantial equivalent of "in proximity to," "in the neighborhood of," "in the presence of," or "in the charge of." If so construed, plaintiffs contend, the facts are controlled by the case of London v. Maryland Cas. Co. 210 Minn. 581, 299 N. W. 193.

We have not had occasion heretofore to construe the precise language in the insurance policy which we now have before us. Courts in other jurisdictions have uniformly construed this and similar language adversely to the contentions of plaintiffs.

The case of William Kinscherf Co. Inc. v. St. Paul F. & M. Ins. Co. 234 App. Div. 385, 386, 254 N. Y. S. 382, 383, involved an action on a similar insurance policy containing a clause excepting liability for "Loss or damage to property insured hereunder whilst in or upon any automobile, motorcycle or horse drawn vehicle unless such conveyance is attended at the time the loss occurs by a permanent employee of the assured * * *." Loss occurred while the car of plaintiff's employe was parked at the curb, with doors and windows locked, and the employe called on a customer and had lunch. In denying recovery, the New York court said:

"* * * Such language can only be interpreted to mean that if the permanent employee of the plaintiff is not actually within or on the automobile, or so near thereto as to be able to observe a theft of the contents, he shall not be deemed to be in attendance at the time the loss occurs."

In Greenberg v. Rhode Island Ins. Co. 188 Misc. 23, 25, 66 N. Y. S. (2d) 457, 459, we have an action on a similar policy excepting liability for "Loss or damage by theft and/or attempted theft from any unattended automobile or motorcycle, unless, at the time the loss occurs, there is *actually in or upon such vehicle* the Assured or a permanent employee of the Assured, or a person whose *sole* duty is to guard the property; * * *." The court commented upon the difference in language from the Kinscherf case, saying:

"* * * There was no requirement [in the Kinscherf case], as here, that at the time of the loss the assured or his permanent employee or the person whose sole duty is to guard the property shall be *actually* in or upon the vehicle. 'Actual', means that which exists in fact or reality, in contrast to that which is constructive, theoretical or speculative * * *."

The facts in the Greenberg case showed that the plaintiff (the insured), who had the jewelry in her possession, had left it in the car with all the doors locked and had entered a restaurant. Prior to entering the restaurant, insured requested another party, a stranger standing near the car, to watch over it and promised to pay him a dollar for his services. Insured returned about an hour later and discovered that one of the doors had been pried open and that the property had been stolen. The court denied recovery, saying (188 Misc. 26, 66 N. Y. S. [2d] 459):

"The language in exclusion clause (d) being clear and explicit, it is manifest that the loss falls within the exception and that no liability has attached to the defendant under the policy, and that plaintiff is not entitled to recover."

In Dreiblatt v. Taylor, 188 Misc. 199, 67 N. Y. S. (2d) 378, which was an action on a policy with an exception clause similar to that in the Kinscherf case, the court adhered to that decision.

In Princess Ring Co. Inc. v. Home Ins. Co. 52 R. I. 481, 483, 161 A. 292, 293, a policy of insurance containing an exception in these words was involved:

"* * * loss or damage to property insured hereunder whilst in or upon any automobile * * * unless such conveyance is attended at the time the loss occurs by a permanent employee of the assured, or by a person whose sole duty is to attend the conveyance and *who at such time shall remain in or upon* the conveyance * * *." (Italics supplied.)

The employe of plaintiff to whose care the jewelry was entrusted stopped in front of an apartment house in which his brother lived, intending to take his brother with him to see a prospective customer. He parked his automobile within ten feet of the entrance to the apartment house where his brother lived, turned off the ignition, and left the key in the switch. He then asked his brother's father-in-law, George Mark, who was sitting on a ledge watching his grandchild play, to watch the car while he went to ring the bell to summon his brother. He saw Mr. Mark lean against the car with his elbow inside the window, and he walked about 40 feet into the courtyard. As he started to ring the bell he heard Mr. Mark call, and he ran out to his car and saw a strange man at the wheel. He ran around the front of the car and had one foot on the running board and his hand on the steering wheel when he was pushed off and the car started, and the thief made away with the automobile. The court, in denying recovery, said (52 R. I. 484, 161 A. 293):

"* * * The phrase 'shall remain in or upon the conveyance' fixed the place where the person attending the automobile was required to be when the property insured was 'in or upon any automobile.' The same phrase is used both in reference to the property insured and the person attending the automobile. Both must be 'in or upon' the automobile. 'Opportunity makes the thief.' If Mr. Mark

had been in the automobile probably the thief would not have entered."

See, also, Eshelman v. Wilson, 83 Ohio App. 395, 80 N. E. (2d) 803, construing the words "in or upon" a motor vehicle, as used in the Ohio guest statute; New Amsterdam Cas. Co. v. Rust, 164 Tenn. 22, 46 S. W. (2d) 70, construing the words "while actually riding in a private automobile," as applied to a policy of insurance, the court denying the right to recover where the insured had been killed while riding on the running board of the automobile.

Nor do we believe that the case of London v. Maryland Cas. Co. 210 Minn. 581, 299 N. W. 193, will sustain plaintiffs' contention. That case involved an action upon a policy of insurance to recover losses sustained in connection with a taking of plaintiff's furs. Plaintiff's employe, Kaplan, had possession of the furs on a selling campaign. Preliminary to calling on customers in Kansas City, he parked and locked his truck in front of a tavern and went inside for a glass of beer. From where he stood within the tavern, Kaplan could see the back part of his truck. When he looked the last time the truck was gone. He ran out and saw the rear of his truck as it was vanishing. The clause of the policy under which plaintiff sought to recover read (210 Minn. 582, 299 N. W. 193):

"A. *Robbery*, within the meaning of this Policy, is limited to a felonious and forcible taking of property * * * (c) By an overt felonious act committed in the presence of such custodian or custodians and of which they were actually cognizant at the time."

The trial court held that there could be no recovery. We reversed, holding that the parties, by the use of the word "presence," did not intend *actual*, literal presence in the strict sense. We held that Kaplan realized that a crime had been committed when he saw the truck was gone and that, so long as the custodian was actually cognizant of the felonious act during its commission and before the felon had completely removed the property, there was compliance with subdivision (c) of the provision quoted above.

The decision is of little value here. The language used is not at all similar, nor are the facts at all the same. If, for instance, the provision in the policy in the London case had read "in the actual presence of," we could hardly have held that "presence" did not mean actual presence, but that it meant something else. Furthermore, if Kaplan had been in a part of the tavern where he could not see the truck at all, it is doubtful if we would have held that he was cognizant of the felonious act.

The language used in the exception now before us is clear and unequivocal. It requires that the assured, or a permanent employe of assured, or a person whose sole duty it is to attend the vehicle be *actually* in or upon the automobile when the loss occurs.

■ It is claimed that a strict construction of the language used by the parties in this exception would lead to an absurd and unreasonable result. In support of this contention, plaintiffs cite various hypothetical situations in which an assured or his employe would be compelled to leave the car, either to secure help in an emergency or where he involuntarily would be required to leave the car unattended for some reason or other beyond his control. It is entirely possible under such circumstances that it would work a hardship on the assured if a loss should occur, but the plain fact is that it involves a risk which was assumed by the assured and not by the insurer. The result is no different from that of any other loss which occurs as a result of some cause not covered by insurance. The mere fact that the assured is compelled to assume a loss which has not been covered by the insurance will not justify courts, by a process of judicial construction, in stretching words beyond their usual meaning to compel an insurer to accept a risk not covered by the policy of insurance. The exception was obviously intended to cover any situation where a loss occurred when the property was not protected by the presence of someone in or upon the car, as required by the language of the exception involved.

To further illustrate the unreasonable result of a strict construction, plaintiffs point out that, inasmuch as exception (I) applies only when the property is in or upon the automobile, all that

plaintiffs' employe would have had to do would be to set the sample cases on the sidewalk and walk away, in which event the exception would have no application. That might well be true; but, even so, it does not permit us to construe the words used to mean something which they clearly do not mean. It is safe to assume that the insurer contracted with the moral risk involved in mind; and, even if an act of the kind mentioned would not be within the meaning of paragraph (A) of the policy, which excepts losses resulting by or from theft of a dishonest character on the part of the assured or his employe, to whom the property has been entrusted, it no doubt would be taken into consideration if the assured sought insurance again in the future.

It is interesting to note, in connection with this argument, that plaintiffs construe the words "in or upon," when used to denote the place where the property must be, to mean that the jewels must actually be in or upon the car and not on the sidewalk or some other place in close proximity to the car. But they seek to construe the identical words, when used to denote the place where the *person* in charge of the property must be, to mean something less than actual presence in or upon the car. The words used in both connections in the policy are identical. If anything, they are more emphatic when used to denote the place where the person must be, as they are preceded by the word "actually." The clause excepts "Loss of or damage to property insured hereunder whilst *in or upon* any automobile, * * * unless, at the time the loss occurs, there is actually *in or upon* such vehicle, the assured * * *." (Italics supplied.) If "in or upon," when used with reference to the location of the property, means that it may not be on the sidewalk adjacent to the vehicle, it is difficult to see how it can mean the opposite when used with reference to the location of the person in charge of the property.

■ The doctrine of substantial compliance has no application to the facts of this case. Where the words used in a contract of insurance expressly require actual compliance, there is no room

for application of the doctrine of substantial compliance when the parties are free to contract as they see fit.

Plaintiffs cite many cases in support of this contention, among them those holding that where a watchman temporarily absents himself from premises where he is required to be the insurer will not be absolved of liability in case of a loss. These cases are clearly distinguishable from the case now before us. The distinction is pointed out in Kansas Mill Owners, etc. Ins. Co. v. Metcalf, 59 Kan. 383, 384, 53 P. 68, 69, where the court said:

"* * * A mere temporary absence of the watchman from the premises in circumstances where a man of reasonable prudence would do the like, would not constitute a breach of the agreement. It does not require that the sole duty of the watchman shall be to watch, *and that he shall always be present.* He may perform other duties if they do not materially impair his usefulness as a watchman, and he may be temporarily or casually absent, whenever a man of reasonable skill and prudence exercising reasonable and ordinary diligence, would do the same." (Italics supplied.)

That is not true where a policy requires someone to be "actually in or upon" an automobile. Requiring a watchman to be in or upon premises covering a large area of space and requiring an assured or his employe to be actually in or upon an automobile are intended to accomplish vastly different purposes. A fire might break out in one part of premises covering a substantial area, even though a watchman were in or upon another part of the plant or premises; but it is difficult to conceive of a more effective deterrent to a potential thief than the presence of someone *in or upon* an automobile. It is extremely unlikely that an attempt would be made to steal from an automobile under these circumstances, and that is no doubt the very thing the insurer had in mind in requiring actual presence in or upon the automobile.

■ The next contention of plaintiffs is that the exception involved does not cover a theft at all. We are unable to follow that line of reasoning. If it does not cover a theft, it would seem that

it has little meaning at all. Plaintiffs argue that, inasmuch as exception (I) refers to loss of or damage to property, with no specific reference to theft, whereas other exceptions do refer specifically to theft, it was not the intention of the parties to except loss by theft under exception (I). It is apparent that specific references to theft in other exceptions have reference to those cases where theft ordinarily does not occur as a direct result of the loss excepted. For instance, exception (D) covers:

"Loss or damage (including loss or damage by fire or theft) directly or indirectly contributed to, by or resulting from typhoon, hurricane, tornado, cyclone, volcanic eruption, earthquake, flood (meaning rising navigable waters) subterranean fire or other convulsion of nature: * * *."

It is apparent that theft does not follow as a direct result of the cause of the loss excepted, but might follow indirectly on account of the opportunity afforded by the exposure of the property as a result of the occurrence which constitutes the main or excepted cause of loss or damage. The same is true of the other exceptions mentioned, where the word "theft" is expressly included. In dealing with the exception now under consideration, loss by theft or larceny obviously was the main risk intended to be excepted. The language is identical with that used in the general coverage clause and covers any loss of and/or damage to the property occurring within the meaning of the policy or the exception.

■ Finally, plaintiffs contend that where policies of insurance are written on forms prepared by the insurer and not on forms prescribed by statute they should be construed liberally in favor of the insured and strictly against the insurer.

Where there is ambiguity in the language used, the rule is applicable. Construction lies only in the field of ambiguity, and where there is no ambiguity there is no room for construction. In such case, the parties being free to contract, the language used must be given its usual and accepted meaning. In Williams v. Union Central L. Ins. Co. 291 U. S. 170, 180, 54 S. Ct. 348, 352, 78 L. ed.

711, 718, 92 A. L. R. 693, Mr. Chief Justice Hughes, speaking for the court, said:

"As there is no ambiguity in the provisions under consideration, there is no occasion for resort to the familiar principle that equivocal words should be construed against the insurer. While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations."

The above statement is quoted with approval and followed by us in Juster v. John Hancock Mut. L. Ins. Co. 194 Minn. 382, 260 N. W. 493, and Rein v. New York L. Ins. Co. 210 Minn. 435, 299 N. W. 385. In Fidelity & Deposit Co. v. Spokane Interstate Fair Assn. (9 Cir.) 8 F. (2d) 224, 226, 44 A. L. R. 468, the court said:

"* * * it is said that the policy was written and prepared by the insurer, and that ambiguous language found therein must be construed most strongly against it. This is a familiar rule, but after all a contract of insurance is only a contract to be construed like any other contract, and, if its language is plain, there is little room for construction."

The language used in the exception involved here is clear and unequivocal. It provides an exception to the general coverage provisions of the policy. The parties were free to contract as they saw fit, and it is not for us to rewrite their contract by construing language to mean something which it obviously does not mean. The plain fact is that this insurance policy covered certain types of losses and excluded others. The loss here involved was one assumed by the owner of the property and not by the insurer.

Affirmed.