**SPHERE DRAKE INSURANCE PLC, UnionAmerica Insurance Company, Ltd., Copenhagen Reinsurance Company, St. Paul Reinsurance Company, and Terra Nova Insurance Company, Ltd., Plaintiffs,**

**v.**

**Robert TRISKO, d/b/a Trisko Designer Jewelry and Trisko Jewelry Sculptures, Ltd., Defendants.**

**No. CIV. 97–334 RLE.**

United States District Court, D. Minnesota.

Sept. 22, 1998.

---

James Thomas Martin, Dan Thomas Ryerson, Gislason Martin & Varpness, Edina, MN, for Sphere Drake Ins. PLC, UnionAmerica Ins. Co., Ltd., Copenhagen Reinsurance Co., St. Paul Reinsurance Co., Terra Nova Ins. Co., Ltd.

Kevin Starr Carpenter, Holmen & Carpenter, St. Cloud, MN, for Robert Trisko, Trisko Jewelry Sculptures, Ltd.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, made in accordance with the provisions of Title 28 U.S.C. § 636(c), upon the Defendants' Motion for Summary Judgment.

A Hearing on the Motion was conducted on March 26, 1998, at which time the Plaintiffs appeared by James T. Martin, Esq., and the Defendants appeared by Kevin S. Carpenter, Esq.

For reasons which follow, the Defendants' Motion for Summary Judgment is denied.

### II. *Factual and Procedural History*

The events which underlie this action are, in large measure, undisputed. The Plaintiffs issued a jeweler's block policy to the Defendants in which they agreed to indemnify the Defendants for "any loss whatsoever," and with a policy limit of $450,000.00. The policy also provided certain exceptions to the Defendants' coverage and, as here pertinent, provided as follows:

> This policy insures against all risks of loss of or damage to the above described property arising from any cause whatsoever EXCEPT:
>
> \* \* \* \* \* \*
>
> (I) Loss of or damage to property insured hereunder while in or upon any automobile, motorcycle or any other vehicle unless at the time the loss or damage occurs, there is actually in or upon such vehicle, the assured, or a permanent employee of the assured, or a person whose sole duty it is to attend the vehicle.
>
> \* \* \* \* \* \*
>
> (M) Unexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory. \* \* \*

Defendant's Insurance Policy at Section 5, Clause (I), (M). The policy covered the period from July 17, 1996, through July 17, 1997, and the Defendants submitted a claim to the Plaintiffs, in the amount of $249,292.00, for the theft of certain jewelry which was said to have occurred on December 1, 1996.[1] The Plaintiffs filed this action on February 12, 1997, seeking a declaration that they have no duty to indemnify the Defendants for their alleged loss.

The Plaintiffs maintain that the Defendants' policy expressly excludes coverage under the circumstances which attended the Defendants' claimed loss. Specifically, the Plaintiffs assert that: (1) the loss occurred when the jewelry was in an automobile which was not physically occupied by the Defendants or by permanent employees of the Defendants, and (2) the Defendants' claim arises out of an unexplained loss, or a mysterious disappearance of the jewelry. Under the previously quoted policy provisions, both of these circumstances would appear to fall within exceptions to the policy's coverage. The Defendants counterclaimed and, at the close of discovery on February 26, 1998, they moved for the entry of Summary Judgment, asserting that there are no material facts in dispute, and that they are entitled to Judgment as a matter of law.

The Defendants manufacture jewelry for exhibition and for sale in their store in Waite Park, Minnesota, and throughout the country by means of a network of retailers. See, *Deposition of Robert Trisko ("Def. Dep.")* at 11. The Defendants principal means of sale, however, is through "juried" shows at which selected artists present their crafts to the public in display booths. See, *Defendants' Memorandum in Support of His Motion for Summary Judgment ("Def. Mem.")* at 6. For this purpose, the Defendants maintain two booths, which are stored in trailers, and which they transport to various shows where he markets his jewelry. *Id.*

According to the Defendants, on November 28, 1996, they packed two suitcases full of jewelry to deliver to Florida. *Def. Dep.* at

---

1. The Defendants also have moved to amend their Counterclaim to allege a property loss of

$272,774.88. We grant the Motion.

105. There were two shows scheduled in Florida at which he intended to display his jewelry; one at an outdoor show in Kendall—which is located near Fort Lauderdale, Florida—and one in Boca Raton. *Id.* at 7. The Plaintiff Robert Trisko ("Trisko"), who is the principal party making the insurance claim, was accompanied to Florida by two of the Plaintiffs' employees—Dale Walz ("Walz") and Eric Liberacki ("Liberacki"). *Id.* The three men flew to Florida on November 29, 1996. A third employee, Ian Lieberman ("Lieberman"), left his home, in Baltimore, Maryland, and meet the others on the following day. *Id.*

Upon arriving in Florida, Trisko and his employees prepared for the exhibitions which were to take place on Saturday and Sunday. They rented an automobile to travel to the exhibitions, and they retrieved a van, which Trisko stored in Fort Lauderdale, and which is employed to travel to the shows on the East Coast. The van contained the two display cases which would be displayed at each of the Florida exhibitions. *Id.*

Trisko maintains that, after arriving in Florida, he distributed the jewelry, which he had packed for the trip, between two suitcases. One suitcase, which is alleged to have contained 300 pieces of jewelry of "lesser quality," was entrusted to Lieberman and Walz for the show to be held in Boca Raton. *Id.* Trisko contends that he kept the second suitcase, which held an additional 450 pieces of jewelry that he intended to display at the show in Kendall, Florida. *Id.* On Friday, November 29, Trisko and his employees set the booth in place at the Kendall showroom, and then Lieberman and Walz proceeded to Boca Raton to follow the same routine. Trisko and Liberacki returned to their hotel, in Kendall, for the evening. *Id.*

On the following day, November 30, 1996, Trisko displayed his jewelry without incident.

Thereafter, on Sunday, December 1, 1996, Trisko returned to his booth at the Kendall show, displayed his goods and, as the show ended and nightfall approached, he and Liberacki collected the jewelry from their booth, and placed the merchandise into one or more suitcases.[2] See, *Defendant's Statement* at 12, 16; *Plaintiffs' Exhibit C ("Plt. Ex.")*. After doing so, they proceeded to disassemble the booth, in anticipation of the return of Lieberman and Walz, who had the van, and trailer, into which the booth would eventually be loaded. According to Trisko, they kept the suitcase, or suitcases, which contained the jewelry, next to their feet as they completed the booth's disassembly. *Id.* Upon completing the task, they placed the suitcase(s) in the trunk of the rental car, closed the trunk, and waited for 30 minutes while resting against the pedestals of the booth. *Def. Dep.* at 108. Both Trisko and Liberacki claim that, during the time that they were outside of their car, and while the suitcase(s) were inside the trunk of that car, they remained either at, or somewheres between 8 and 16 feet from the car, and were vigilant in their surveillance of the car, and the area immediately around it. *Id.; Liberacki Dep.* at 67.

As related by Trisko, the area around where they were observing the car was the site of great activity. Around them, vendors were removing their displays, and preparing them for transport to other areas. There was a "fair amount of clanging, hammering and other noises," and cars were driving through the area as well. *Def. Mem.* at 11. Nonetheless, Trisko maintains that he and Liberacki were not distracted, and that no one was able to access the suitcase(s) which had been placed in the secured trunk of his car. *Def. Mem.* at 10–11.

**2.** A conflict in the evidence exists as to the number of suitcases that were employed in the transport of the jewelry. Trisko asserts that there were a total of three suitcases—one routed to the Boca Raton show, and two containing the jewelry for the Kendall exhibition—while Walz testified, during his deposition, that there were only two suitcases used to carry the jewelry. The Plaintiffs insist that the discrepancies between the testimony of Trisko and Walz reflect Trisko's attempt to conform his testimony to the initial statements that he made to the Metro–Dade police, in which he represented that there were two suitcases in the trunk of his vehicle at the time of the alleged burglary. The contradiction in the Defendants' version of the operative facts are, of course, viewed in a light most favorable to the Plaintiffs, and supports a conclusion that there are grounds upon which a reasonable person could conclude that the theft of the jewelry occurred under "mysterious circumstances."

Both Trisko and Liberacki have testified that, after approximately 30 minutes, they moved from outside to sit within the vehicle. *Def. Mem.* at 11. They sat in the front seat of the car, and remained there for approximately one hour, at which time they were joined by Lieberman and Walz, who had just returned from Boca Raton with the van, and trailer, which contained the Defendants' second display booth. *Def. Mem.* at 11. Trisko and Liberacki assert that they remained in the automobile for the entire period between entering the car, and the arrival of Lieberman and Walz. Trisko spoke with Lieberman about the Boca Raton show, while Liberacki and Walz loaded the trailer with the disassembled display case.[3] Immediately after they completed the loading of the booth, Trisko and Liberacki drove to an airport car rental facility, in order to return their rental vehicle. Using the key to the trunk, Trisko opened it to find that the suitcase(s) were not there. *Def. Statement* at 19; *Plt. Ex. C.*

The missing suitcase(s) were reported to the Metro–Dade Police Department, and Trisko provided a statement concerning the events which surrounded the loss of the suitcase(s), and the jewels contained therein. The case was assigned to Detective Michael Crowley ("Crowley"), who speculated that the robbery could have occurred as the Defendant and Liberacki sat in their car. *Plt. Ex. C* at 18. Under Crowley's hypothesis, the noise and bustle of the events around the car could have concealed the sound of a thief entering the trunk with a tool designed for such purposes. He recounted his awareness of prior instances in which trunks were breached in such a manner while the vehicle was occupied. *Id.* According to Crowley, the Dade County area is inhabited by very accomplished professional thieves who, by distraction, were capable of completing the crime that appeared to be involved here.

The Plaintiffs take exception to any contention that the lock on the trunk of the Defendants' vehicle could have been opened in the manner suggested by Crowley—at least without damaging the lock in a visible and operational way. Jim Laupan ("Laupan"), who has been a professional locksmith since 1988, and who has, in the course of his professional career, repaired and replaced "hundreds" of the model of lock that was employed on the Defendants' rental car, has averred that such a lock could not have been opened without significant, visible damage to the external and internal workings of the lock. See, *Laupan Aff.* at ¶¶ 11–12. Laupan submitted his Affidavit after viewing a picture of the tool, that is alleged by the Defendants to be capable of gaining entry to the locked trunk without visible damage, and he concluded that such a tool was not, in fact, capable of such stealth. He also believed that the use of that type of tool would have rendered the lock, on the trunk of the Defendants' car, inoperable for subsequent use. *Id.* at ¶ 13. The Defendants argue, based on their expert, Walter Yarbrough ("Yarbrough"), that entry to the trunk could have been accomplished by use of a duplicate key which, Yarbrough contends, are easily obtained. *Yarbrough Aff.* at ¶¶ 10–11. In the alternative, Yarbrough suggests that the use of a "jiggle key" could have allowed access to the car while it was being occupied. *Id.* at ¶¶ 11–12.

On Monday, December 2, 1996, Trisko called his wife, Helen ("Helen"), and informed her of the theft. After arriving home, later on that same day, Trisko explained the circumstances of the alleged theft in greater detail. Helen was responsible for the administrative, and bookkeeping side of the business. On December 5, 1996, she notified the Stearns County Sheriff's Depart-

---

**3.** Another conflict appears in the Record concerning Trisko's identification of the location of his conversation with Lieberman. In a recorded statement, which was taken on December 17, 1996, Trisko related that, while Liberacki and Walz loaded the trailer, he and Lieberman stood outside the car. However, during his deposition, which was taken six months later, he contradicted his earlier statement and claimed that he never got out of the car while the display booth was being loaded, and that the discussion, which ensued with Lieberman, occurred inside of the car. The Plaintiffs have characterized Trisko's conflicting recollections as an attempt by him to conform his testimony to the requirements of his insurance policy's exceptions which, by the time of his deposition, had been raised by the Plaintiffs. Again, the effect of this inconsistency is to present a genuine issue of fact as to whether the alleged theft occurred under "mysterious or unexplained circumstances."

ment, and reported her suspicion that theft, in Kendall, had been staged by Trisko and Liberacki. She further suggested that there had been employee-related thefts from the business in the past, and she requested that the information, that she had provided, be forwarded to the Florida authorities who were investigating the theft.

Helen's allegations of prior employee-thefts were apparently related to the financial difficulties that the business had experienced in previous years, and that had only recently been resolved by the hiring of a new bookkeeper, Martha Hahn ("Hahn"). Hahn testified, in her deposition, that she had discovered approximately $123,000 missing from the company's assets, and an additional $13,000, in written receipts, that had never been deposited in Defendants' banking accounts. Hahn alleges that Trisko telephoned her, from out of town, shortly after the theft had occurred, that he asked her to locate a copy of his jeweler's block insurance policy, and that he requested her to "read [him] the policy so [he] kn[e]w what to say to the police." *Hahn Dep.* at 66. Hahn also reported that she had notified the Mahowald Insurance Agency, which was the insurance agent for the Defendants, and informed the agency that the insurance claim, which the Defendants were submitting for the Kendall theft, was fraudulent. This information was also transmitted to the Stearns County Sheriff's Department.

Trisko recounts that, several months after the theft, he was told that some of his jewelry had been observed at a Miami jewelry store. Lieberman visited the store, and discovered that several of the Defendants' stolen pieces of jewelry were being sold there. Trisko notified Crowley of the location of that jewelry and, after obtaining a Search Warrant, the jewelry was seized by the Metro–Dade Police on September 11, 1997.

On the basis of this Record, the Defendants claim that they are entitled to a declaration, as a matter of law, that the Plaintiffs have a contractual obligation to indemnify them for the loss of their jewelry.

### III. *Discussion*

A. *Standard of Review.* Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedur-al shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue. *Lower Brule Sioux Tribe v. State of South Dakota,* 104 F.3d 1017, 1021 (8th Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 64, 139 L.Ed.2d 26 (1997). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Dodd v. Runyon,* 114 F.3d 726, 729 (8th Cir.1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure;* see also, *Anderson v. Liberty Lobby, Inc.,* supra at 256, 106 S.Ct. 2505; *Ivy v. Kimbrough,* 115 F.3d 550, 551 (8th Cir.1997); *Thomas v. Runyon,* 108 F.3d 957, 959 (8th Cir.1997). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra at 322, 106 S.Ct. 2548; see also, *Greer v. Shoop,* 141 F.3d 824, 826 (8th Cir.1998); *Mayard v. Hopwood,* 105 F.3d 1226, 1228 (8th Cir.1997). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* supra at 323,

106 S.Ct. 2548; see also, *Bell.Lumber and Pole Co. v. United States Fire Ins. Co.*, 60 F.3d 437, 441 (8th Cir.1995); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir.1995); *Settle v. Ross*, 992 F.2d 162, 163 (8th Cir.1993).

B. *Legal Analysis.* Under Minnesota law, "[a]n insurer has the burden of proving that a policy exclusion applies." *Henning Nelson Construction Company v. Fireman's Fund American Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn.1986); *SCSC Corp. v. Allied Mutual Insurance Co.*, 536 N.W.2d 305, 313–14 (Minn.1995), citing *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989)(policy exclusion an affirmative defense to insurer's obligation under insurance policy). Since the Plaintiffs do not contend that the policy at issue is inoperative for any reason, other than its exclusions, our analysis turns to an examination of the exclusions upon which the Plaintiffs rely. As we have previously noted, the Plaintiffs rely upon the "in or upon" the vehicle exclusion, and the "unexplained loss," or "mysterious disappearance" exclusion.[4] Of course, as a threshold matter, we are faced with the legal issue of contractual interpretation.

1. *Standard of Review.* Under Minnesota law, whether an insurance policy exclusion is valid and enforceable is a question of law. See, *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998); *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994); *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992). The legal question, thus posed, is addressed under general principles of contract interpretation. See, *St.*

*Paul Sch. Dist. No. 625 v. Columbia Transit Corp.*, 321 N.W.2d 41, 45 (Minn.1982). It is settled law in Minnesota that an insurance contract is to be construed as a whole, with all doubts concerning the meaning of its language to be resolved in favor of the insured. See, *Watson v. United Services Automobile Association*, 566 N.W.2d 683, 692 (Minn. 1997); *Henning Nelson Constr. Co. v. Fireman's Fund Amer. Life Ins. Co.*, supra at 652; *Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977).

If an ambiguity in the language of an insurance contract exists, then the Court is obliged to construe the ambiguity against the insurer, and in favor of the insured. See, *American Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire and Cas. Co.*, 551 N.W.2d 224, 227 (Minn.1996). The language of an insurance policy, however, is ambiguous only if it can reasonably be given more than one meaning. See, *Lhotka v. Illinois Farmers Ins. Co.*, 572 N.W.2d 772, 773 (Minn.App. 1998), rev. denied (Minn., March 19, 1998). In undertaking such an assessment, the Court must fastidiously guard against any invitation to "create ambiguities" where there are none. *Id.* Nevertheless, "Minnesota courts have been quite clear that the initial existence of a contractual ambiguity does not 'ineluctably lead to the conclusion that the drafter is to lose.'" *Piper Jaffray Cos. v. Nat'l. Union Fire Ins. Co.*, 967 F.Supp. 1148, 1154 (D.Minn.1997), quoting *Davis by Davis v. Outboard Marine Corp.*, 415 N.W.2d 719, 724 (Minn.App.1987). When insurance policy language is clear and unam-

---

4. As a preliminary matter, the Defendants argue that certain of the Plaintiffs' materials, which were presented in opposition to their Motion, would be inadmissible at Trial and, therefore, should be disregarded for the purposes of this Motion. See, *Rule 56(e), Federal Rules of Civil Procedure* ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *Love v. Commerce Bank of St. Louis*, 37 F.3d 1295, 1296 (8th Cir.1994)(final paragraph of the plaintiff's initial Affidavit opposing Summary Judgment struck, because the allegation was not based upon personal knowledge or, at best, was premised upon inadmissible hearsay). In particular, Trisko directs our attention

to the deposition of Hahn, and complains that her opinion concerning his alleged staging of theft is without foundation and, therefore, is incompetent.

Upon careful review, we find no showing of personal knowledge, on Hahn's part, nor a showing of such expertise as would be required to support her hypothesis of a staged theft. Accordingly, we attach no weight to Hahn's expression of opinion, and have reviewed her deposition for historical fact purposes, alone. Of course, our rejection of her opinion, in the context of Rule 56, does not forecast any ruling at the time of Trial, should Hahn be offered as a witness at that time, as her foundation to testify at that time will be determined on the state of the then developed Record.

biguous, the language employed must be given its usual and accepted meaning. See, *Lobeck v. State Farm Mut. Ins. Co.,* supra at 249, citing *Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (Minn.1960).

 Provisions of an insurance contract that limit liability are to be strictly construed against the insurer and, where a claim is arguably within the policy's coverage, the "insurer has the burden of proving that a policy exclusion applies." *Columbia Heights Motors, Inc. v. Allstate Ins. Co.,* 275 N.W.2d 32, 35 (Minn.1979); *Caledonia Community Hosp. v. St. Paul Fire & Marine Ins. Co.,* 307 Minn. 352, 354, 239 N.W.2d 768, 770 (Minn.1976); *Northwest Airlines, Inc. v. Globe Indem. Co.,* 303 Minn. 16, 26, 225 N.W.2d 831, 837 (Minn.1975). Nevertheless, exclusions within an insurance policy are as much a part of the contract as the policy's other provisions, and they must be given the same consideration in determining the extent of the policy's coverage. *Id.* Likewise, a Court must not read ambiguity into the plain language of an insurance policy in order to create coverage where none would otherwise exist. *Bobich v. Oja,* supra at 294, 104 N.W.2d at 24.

2. *Legal Analysis.* Since they involve different considerations, we separately address the policy exclusions that are here at issue.

 a. *The "Actually In Or Upon" Exception.* The Plaintiffs contend that the Defendants' theft loss is excluded from coverage, under the Defendants' policy with the Plaintiffs, because the evidence does not establish that, as a matter of law, Trisko or Liberacki were "actually in or upon" the automobile, in which the jewels were secured, at the time of the theft. In turn, the Defendants contend that this is an overly narrow reading of the policy language, and that, in any event, the evidence before us establishes that, in all probability, the theft occurred while Trisko and Liberacki were seated in the vehicle. We find neither argument convincing.

First, the Defendants contend that this exclusion is ambiguous, as it is susceptible to more than one meaning. Specifically, they argue that the phrase "in or upon the vehicle" may be read to mean either that the

insured, his employee, or another person, whose sole duty was to attend the vehicle, must be physically in contact with the automobile, or that a mere "proximity" to the vehicle is sufficient. In support of this proposition, the Defendants draw our attention to a dictionary definition of "upon" which includes the "proximity to" modifier. *Def. Mem.* at 21–22. As the argument continues, since the language could be susceptible to more than one construction, we should not hold the terminology to its plain meaning, but should find coverage for their loss. See, *Lhotka v. Illinois Farmers Ins. Co.,* supra at 773.

In contrast, the Plaintiffs urge that the phraseology of the exclusion is clear and unambiguous, and should be given its usual and accepted meaning. See, *Lobeck v. State Farm Mutual Ins. Co.,* supra at 249. In support of this urging, the Plaintiffs note that nearly the same provision was construed by the Minnesota Supreme Court in *Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co.,* 235 Minn. 243, 50 N.W.2d 629 (Minn.1951). There, the operative insurance policy extended coverage "against 'loss of and/or damage to the [subject] property * * * or any part thereof arising from any cause whatsoever except as hereinafter mentioned * * *.'" *Id.* at 244, 50 N.W.2d at 630. Expressly among the exclusions from coverage was the following:

(I) Loss of or damage to property insured hereunder whilst in or upon any automobile, motorcycle or any other vehicle unless, at the time the loss occurs, there is actually in or upon such vehicle, the assured or a permanent employee of the assured, or a person whose sole duty it is to attend the vehicle.

*Id.*

Notwithstanding this language, in *Ruvelson,* the insured sued his insurer for the loss of jewelry which an employee had left unattended in his car, while he crossed the street to a hotel, in order to buy a cup of coffee. The employee had securely locked the car before leaving for the hotel, and the car was left unattended for only a period of from two to four minutes. While the employee was in the hotel, the car window was broken, and

the two suitcases containing jewelry were taken. The insured asserted there, as the Defendants do here, that even though the employee was not physically in the car he was sufficiently close to be "upon" the vehicle at the time that the loss occurred.

The Court rejected the argument and found that the language of the exclusion was "clear and unequivocal." *Id.* at 251, 50 N.W.2d at 633. According to the Court, "[the contract provision] requires that the assured, or a permanent employee of assured, * * * be [a]ctually in or upon the automobile when the loss occurs." *Id.* The insured in *Ruvelson*, like the Defendants here, argued that such a strict construction would lead to an absurd result—namely, that under some foreseeable circumstances, it might be beyond the insured's control whether or not to leave the automobile unattended—but the *Ruvelson* Court was unpersuaded. As the Court reasoned, even if the clause, under some other set of circumstances, created a hardship on the insured, that was a circumstance over which the parties were free to contract, but the Court would not "construe the words used to mean something which they clearly do not mean," in order to account for the parties' failure to contract differently. *Id.* at 252, 50 N.W.2d at 634.

Illustrative of the unreasonable results, which such a construction of the exclusion could breed, the insured there, as the Defendants here, argued that, if the suitcases had not been secured in the car at the time of the loss, then there would certainly have been coverage, as only the presence of the insured property, in an unoccupied automobile, precluded the insurance coverage. See, *Defendant's Second Reply Memorandum in Support of Summary Judgment*, at 3. Again, the *Ruvelson* Court rejected the argument and observed, as follows:

> It is interesting to note, in connection with this argument, that the Plaintiffs construe the words 'in or upon,' when used to denote the place where the property must be, to mean that the jewels must actually be in or upon the car and not on the sidewalk or some other place in close proximity to the car. But they seek to construe the identical words, when used to denote the place where the Person in charge of the property must be, to mean something less than actual presence in or upon the car. The words used in both connections in the policy are identical. If anything, they are more emphatic when used to denote the place where the person must be, as they are preceded by the word 'actually.' The clause excepts 'Loss of or damage to property insured hereunder whilst In or upon any automobile, * * * unless, at the time the loss occurs, there is actually In or upon such vehicle, the assured * * *.' (Italics supplied.) 'If 'in or upon,' when used with reference to the location of the property, means that it may not be on the sidewalk adjacent to the vehicle, it is difficult to see how it can mean the opposite when used with reference to the location of the person in charge of the property.

*Id.* at 252, 50 N.W.2d at 634.

We find the same reasoning to discredit the Defendants' construction of this exclusionary language. Notwithstanding their argument to the contrary, if their jewelry was stolen, when it was outside of their vehicle, then the same definition of the terms "in or upon," as the Court applied, in *Ruvelson*, would deny them coverage here.

Finding no basis upon which to responsibly distinguish the Court's holding in *Ruvelson*, the Defendants urge us to limit the decision to the facts then before the Minnesota Supreme Court, or to reject its reasoning and, therefore, its result. As we have explained elsewhere, however:

> A State's highest Court is the "final arbiter of what is state law," *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139(194), and this Court could no more override the Minnesota Supreme Court on the meaning of [state law] than we could countermand the United States Supreme Court's interpretation of Federal law. *Hayes v. Blue Cross Blue Shield of Minnesota*, 21 F.Supp.2d 960, 973–74 (D.Minn.1998); see also, *St. Louis Convention & Visitors Com'n v. National Football League*, 154 F.3d 851, 865, 1998 WL 559082 *15 (8th Cir., September 3, 1998)("[A] federal court ruling on a point of state law is obligated to follow the law as announced by that state's highest

court."); *Hillside Enterprises, Inc. v. Continental Carlisle, Inc.*, 147 F.3d 732, 735 n. 14 (8th Cir.1998) ("It is not the place of the federal courts, however, to reexamine state court determinations of state law questions.").

The Court's holding, in *Ruvelson*, which has gone unaltered for nearly a half-century, is authoritative, and binding, upon this Court. To reject the authority of *Ruvelson*, would plainly "exceed the bounds of federal court authority." *Reeves v. Hopkins*, 76 F.3d 1424, 1427 (8th Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996).[5]

 Moreover, we reject the Defendants' assertion that the reasonable expectations doctrine would compel a difference result than that reached in *Ruvelson*. Under that doctrine, when the application of policy language would be contrary to the objectively reasonable expectations of an insured, the Courts will interpret the policy according to those reasonable expectations, even though a painstaking study of the policy would have negated those expectations. *Christie v. Illinois Farmers Ins. Co.*, 580 N.W.2d 507, 509 (Minn.App.1998), citing, *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 278 (Minn.1985). Minnesota Courts, however, limit the doctrine to policies with hidden exclusions. See, *St. Paul Fire & Marine Ins. Co. v. Federal Deposit Insurance Corporation*, 968 F.2d 695, 702–03 (8th Cir.1992)("Minnesota courts have consistently restricted application of the doctrine to exceptional cases where a policy provision is both a 'hidden major exclusion' and unconscionable as a result of unequal bargaining

power where the insured may have been misled."); *Conwed Corp. v. Employers Reinsurance Corp.*, 816 F.Supp. 1355, 1359 (D.Minn.1993); *Ross v. City of Minneapolis*, 408 N.W.2d 910, 914 (Minn.App.1987).

 In applying the reasonable expectations doctrine to insurance contract provisions, the factors to consider include: (1) ambiguity in the language of the contract; (2) whether the insured was told of important, but obscure, conditions or exclusions contained therein; and (3) whether the particular provision in contract at issue is item known by the public generally. See, *Atwater Creamery Co. v. Western Nat'l. Mut. Ins. Co.*, supra at 278. The application of the doctrine to the interpretation of insurance contract provisions does not automatically remove the responsibility of the insured to read his policy, but it recognizes that, in certain instances, where major exclusions are hidden in a definitions section, for example, the insured should be held only to its reasonable knowledge of the literal terms and conditions of the contract. *Id.* The insured may show what actual expectations he had, but the factfinder should determine whether those expectations were reasonable under the circumstances. *Id.* at 278.

As we have already observed, here the meaning of the exclusion was clear and unambiguous and, while ambiguity may not be required for the doctrine to apply, see, *Atwater Creamery Co. v. Western Nat'l. Mut. Ins. Co.*, supra at 277 (finding that although the technical definition of "burglary" was unambiguous, the reasonable expectations doctrine should apply),[6] the result—namely, that the

5. Without attempting to be exhaustive, we would merely note that other Courts have reached mixed results. As the Court observed, after collecting the cases, in *American Stone Diamond, Inc. v. Lloyds of London*, 934 F.Supp. 839, 843 (S.D.Tex.1996):

Courts have consistently held nearly identical policy language to be unambiguous and, based upon such exclusions, have denied coverage to insureds who were not literally in or upon their vehicles at the time of the losses, even though the insureds may have been only a short distance away from the vehicle, watching the vehicle, or absent from the vehicle for only a short period of time.

See, also, *Royce Furs, Inc. v. Home Insurance Co.*, 30 A.D.2d 238, 291 N.Y.S.2d 529 (1968); but see, *Star Diamond, Inc. v. Underwriters at Lloyd's, London*, 965 F.Supp. 763 (E.D.Va.1997)(finding

that insured's presence, at no more than nine inches from his vehicle, was "actually in or upon" the vehicle); *JMP Associates, Inc. v. St. Paul Fire & Marine Ins. Co.*, 345 Md. 630, 693 A.2d 832 (1997)(distinguishing *Ruvelson*, and other cases, based upon the absence of the term "actually" in the policy language there at issue). Suffice it to say here, the meaning of the operative exclusion having been resolved by the Minnesota Supreme Court, we have no principled basis, let alone the requisite authority, to reach a contrary conclusion.

6. In *Rusthoven v. Commercial Standard Ins. Co.*, 387 N.W.2d 642 (Minn.1986), the Minnesota Supreme Court cited *Atwater* for the proposition that, while ambiguous language is to be construed in favor of the insured, "[t]he result of such a construction, however, must not be be-

Defendants may find themselves without coverage—is not the type of malady that the doctrine was formulated to rectify.

Rather, the reasonable expectations doctrine attempts to address the disproportionate bargaining power that commonly exists between insurers and the insured. *Id.* It also recognizes a lay person's lack of skill, or ability, to interpret the contract language contained in many policies. *Id.* While the Defendants cannot be held to have committed a "painstaking review" of their policy, the may be properly charged with the responsibility to read it. See, *Christie v. Illinois Farmers Ins. Co.*, supra at 509. The Record before us, however, fails to demonstrate that, at any time prior to the theft, the Defendants had undertaken any consideration of the policy's provisions, or exclusions. See, *Def. Dep.* at 105. Accordingly, we are not presented with any showing that, under the circumstance of their loss, the Defendants had an objectively reasonable expectation that they would be indemnified for what was taken from them through theft. Not only was the operative language unambiguous, but it was clearly set forth where such a provision is properly found in the logical progression of an insurance contract. Where, as here, the provision at issue is conspicuous, and not shrouded in the definitions section of the policy, or otherwise obscured, we have found no support for the Defendants' contention that their subjective expectation of coverage should be found objectively reasonable. See, *Merseth v. State Farm Fire and Cas. Co.*, supra at 18; *Arndt v. American Family Mut. Ins. Co.*, 380 N.W.2d 885, 890 (Minn.App.1986), *reversed in part on other grounds, Arndt v. American Family Ins. Co.*, 394 N.W.2d 791 (Minn. 1986); *Sonneman v. Blue Cross & Blue Shield of Minnesota*, 403 N.W.2d 701, 708 (Minn.App.1987)(the reasonable expectations doctrine does not apply since the policy does not contain a "hidden exclusion" in the definitions section as in *Atwater* ). Quite properly, the parties have apportioned their risks, with the Defendants accepting any risk of loss, should their jewelry be stolen while they were "actually in or upon" a vehicle in which they had stored the jewelry. Nothing in the Record before us would allow them any reasonable expectation that this allocation of risk was hidden from them, or was secured because of the disproportionate bargaining power of the contracting parties. As the Court expressly recognized in *Ruvelson*, the mere fact that a hardship might befall the insured if they were absent from their vehicle at the time of theft, and were denied coverage, should not commend a different construction of the exclusion at issue, because that loss arises from "a risk which was assumed by the assured and not be the insurer." *Ruvelson v. St. Paul Fire & Marine Ins. Co.*, supra at 251, 50 N.W.2d at 634. As a result, we reject, as without merit, the Defendants' argument that the "reasonable expectations doctrine" would extend coverage to their loss.

Lastly, notwithstanding the Defendants' argument to the contrary, we are not persuaded that the facts are so one-sided as would permit the singular conclusion that the theft occurred while Trisko, and Liberacki, were occupying their vehicle. While it is true that, when they were outside of the vehicle, they observed nothing that would suggest that a theft was in progress, the very same may be said concerning the period of time during which they were seated in the automobile. Given the divergent views of the parties' respective expert witnesses, and the presence of a genuine issue of material fact as to when the alleged theft occurred, we

yond the reasonable expectations of the insured." *Id.* at 645. The dissent argued that the majority had thereby abandoned the application of the reasonable expectations doctrine even in the absence of an ambiguity, as the Court had adopted the rule in *Atwater*. *Id.* at 646. Since the decision in *Rusthoven*, Minnesota Courts have appeared to be uncertain as to the exact application of the reasonable expectations doctrine, when no ambiguity exists, and they have declined to apply the doctrine beyond the facts of *Atwater*. See, *Merseth v. State Farm Fire and Cas. Co.*, 390 N.W.2d 16, 18 (Minn.App.1986). Our decision, which extends the benefit of the doubt to the Defendants, by addressing the application of the reasonable expectations doctrine, despite the absence of contractual ambiguity, nonetheless confirms that Summary Judgment, for the Defendants, is not warranted on this ground. Of course, if *Rusthoven* reflects an abandonment of the reasonable expectations doctrine, when no ambiguity exists in the policy language at issue, then our consideration of this aspect of the Defendants' argument is superfluous.

necessarily leave the resolution of that issue to the Jury, upon proper instruction. Accordingly, we deny the Defendants Summary Judgment under the "actually in or upon" exclusion in the Defendants' insurance policy.

**b.** *The "Unexplained Loss, Mysterious Disappearance" Exception.* Even if we had found that the "actually in or upon" exclusion were inapplicable, we would be compelled to deny Summary Judgment, in the Defendants' favor, because of the "unexplained loss, mysterious disappearance" exclusion, which provides, in pertinent part, as follows:

> This policy insures against all risks of loss or damage to the above described property arising from any cause whatsoever
> EXCEPT:
>
> \* \* \* \* \* \*
>
> (M) Unexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory. \* \* \*

The Plaintiffs contend that the Defendants have failed to advance an adequate explanation for the loss of the jewels for which they seek indemnification. According to the Plaintiffs, whether the circumstances of the Defendant's loss are "unexplained" or "mysterious" is an ultimate issue of fact, or issue of mixed fact and law, which is reserved for a Jury's resolution.

The Defendants do not agree, and they assert that the exclusion, in which the Plaintiffs now seek refuge, is applicable, if at all, only if the unsubstantiated opinions of Laupan, Trisko's wife, Helen, and Hahn, are fully accredited. As viewed by the Defendants, the loss of their jewelry is neither unexplained, nor mysterious, for the jewels were reported stolen, and Crowley's opinion would support that contention. Therefore, being explained, the "unexplained loss," or "mysterious disappearance" exclusion cannot apply—the Defendants would have us believe—as a matter of law. We disagree.

The facts before us leave grave doubt as to the circumstances which produced the Defendants' loss. We cannot say that the Plaintiffs' theory of loss, which finds some support in the evidence proffered by Trisko's wife, is so implausible as to preclude its submission to the Jury, or that the Defendants' view of the evidence would proscribe any other Jury

Verdict than one in the Defendants' favor. While we make no predictions as to the ultimate resolution of this issue at Trial, it is clear that a reasonable Juror, who is presented with the Record we here review, could permissibly infer that the cause of the Defendant's loss is either mysterious or unexplained.

Neither the Minnesota Courts, nor the Courts of this Circuit, have addressed the precise contours of the "unexplained loss" or "mysterious disappearance" exclusion, and the decisions we have reviewed are necessarily fact-driven. The Defendant urges us to follow the reasoning of *Stella Jewelry Mfg., Inc. v. Naviga Belgamar,* 885 F.Supp. 84 (S.D.N.Y.1995), which resulted in a partial Summary Judgment being granted to the insured, notwithstanding what would appear to be an unavoidable Jury issue—namely, the credibility of the insured. See, *Gurfein Bros., Inc. v. Hanover Insurance Co.,* 670 N.Y.S.2d 423, 426 (1998)(implicitly rejecting the Court's resolution, in *Stella,* by finding a Jury issue under similar facts). In *Stella,* the President of a company was transporting jewelry from New York to Dallas, Texas. In Texas, he paused outside an acquaintance's home in order to load the first of two bags of jewels into the trunk of his car. As he did, he sat the second bag at his feet. After placing the first bag in the trunk of the car—a task he estimated took some ten seconds to complete—he reached for the second bag. The second bag of jewels was suddenly no longer at his feet. The jeweler had neither heard, nor seen, anything that would indicate what had happened to his second bag of jewelry. The insurance company, through which the jeweler was insured, refused to indemnify the insured for his loss, citing an exception within the policy for losses due to the "mysterious disappearance" of the insured property. In *Stella,* the Court defined a "mysterious disappearance" as "a factual circumstance in which a reasonable person could not infer based on the evidence presented the manner in which the reported loss occurred." *Id.* at 85. As related by the Court, the credibility of the insured was central to the decision reached in *Stella,* as the Court concluded:

The mysteriousness exclusion really related to the credibility of [the] testimony by Plaintiff's President. There is no evidence from which one could deduce that the nylon bag had blown away or been lost in any other manner than by theft. Under those circumstances no reasonable jury could reach the conclusion that the loss occurred otherwise.

*Id.* at 86.

The *Stella* Court held that, given the strength of the insured's credibility, the exception should not apply. *Id.*

We decline to follow *Stella*, since the assessment of a party's credibility is not a function that the Court can serve in deciding a Motion for Summary Judgment. See, *Peter v. Wedl*, 155 F.3d 992, 996, 1998 WL 612747 *3 (8th Cir., September 15, 1998)("At the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter;" "[r]ather the court's function is to determine whether a dispute about a material fact is genuine."), quoting *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Bryan v. Norfolk and Western Railway Co.*, 154 F.3d 899, 902, 1998 WL 596055 *2 (8th Cir., September 10, 1998) ("In reviewing whether a grant of summary judgment was appropriate * * * we do not weigh the evidence or attempt to determine witness credibility"), citing *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 598 (8th Cir.1998).

Even if we accepted the reasoning of *Stella*, we would find the case distinguishable since the Plaintiffs make no secret of their lack of belief in the Defendants' version of how the loss is said to have occurred. They point to the testimony of Trisko's wife, which suggests that the theft was a subterfuge, and they emphasize the inconsistencies in Trisko's varying accounts of his activities at or about the time the theft is alleged to have been committed. Further, they proffer the testimony of Laupan, who opines that the robbery could not have occurred in the manner suggested by Crowley. We conclude, based upon an assessment of the Record, that a genuine issue of material fact exists, as to the occurrence of a theft, and as to the explanation of how a theft could have been perpetrated without detection. Under such circumstances, the Courts have left the application of the exclusion to the judgment of the Jury, which is properly entrusted with the resolution of genuine and material factual disputes. Of course, on this Record we also cannot conclude that a theft did not occur, nor are the circumstances of the loss so clearly established that we can say, as a matter of law, that the exclusion applies so as to preclude the Defendants' indemnity claim. See, e.g., *Star Diamond, Inc. v. Underwriters at Lloyd's*, supra at 768–69, and cases cited therein. Rather, on this Record, we conclude that a Jury issue is presented which prevents an award of Summary Judgment in either party's favor. As the Court observed, in *Gurfein Bros., Inc. v. Hanover Insurance Company*, supra at 426:

In the case at bar, * * * plaintiffs have offered an explanation, supported by circumstantial evidence from several sources, which if believed by the trier of fact could reasonably support an inference of theft. From the evidence presented .by plaintiffs, the trier of fact could infer the approximate time and place of the theft as well as the methods and possible identity of the thieves. Defendant has failed to show that this version of events is so illogical, implausible or speculative as to warrant summary judgment for the insurer. The complaint should therefore be reinstated.

Much of the same could be said here, and we conclude that Summary Judgment is not warranted, for either party, on the basis of the "unexplained loss" or·"mysterious disappearance" exclusion.

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendant's Motion to Amend Counterclaim to Conform to the Proof [Docket No. 18] is GRANTED.

2. That the Defendant's Motion for Summary Judgment [Docket No. 12] is DENIED.